STEP PLAN SERVICES, INC., Wayne Bursey, Benistar Admin. Services, Inc., Benistar Insurance Group, Inc., Benistar 419 Plan Services, Inc., Appellants

v.

John J. KORESKO, V, Lawrence Koresko, Koresko and Associates, P.C., Koresko Financial, L.P., Penn–Mont Benefit Services, Inc., Capitas Financial, LLC, Anderson, Kill & Olick, P.C., Virginia I. Miller, Lawrence S. Fischer, Community Trust Company, Lowell Gates, Arrow Drilling Company, Inc., Nestor Garza Sanchez & Daniels, Manuel Sanchez and John Daniels.

Step Plan Services, Inc., Wayne Bursey, Benistar Admin. Services, Inc., Benistar Insurance Group, Inc., Benistar 419 Plan Services, Inc.,

v.

John J. Koresko, V, Lawrence Koresko, Koresko and Associates, P.C., Koresko Financial, L.P., and Penn–Mont Benefit Services, Inc., and Capitas Financial, LLC and Anderson, Kill & Olick and Virginia I. Miller, c/o Anderson, Kill & Olick, and Community Trust Company and Lowell Gates and Arrow Drilling Co., Inc., and Nestor Garza, and Sanchez and Daniels, Manuel Sanchez and John Daniels.

Appeal of John J. Koresko, V, Lawrence Koresko, Koresko and Associates, P.C., Koresko Financial, L.P. and Penn–Mont Benefit Services, Inc.

Superior Court of Pennsylvania.

Argued Jan. 12, 2010.
Filed Dec. 15, 2010.
Reargument Denied Feb. 22, 2011.

Ira Silverstein, Philadelphia, for Step Plan.

Edward M. Dunham, Robert L. Byer, Philadelphia, for Anderson, Kill & Olick and Miller.

Steven D. Johnson, Philadelphia, for Capitas.

John J. Koresko, Bridgeport, for Koresko Defendants.

Richard B. Morrison, Philadelphia, for Travelers Property & Casualty.

BEFORE: BOWES, GANTMAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

STEP Plan Services, Inc., Wayne Bursey, Benistar Admin. Services, Inc., Benistar Insurance Group, Inc., Benistar 419 Plan Services, Inc. (collectively "STEP") and John J. Koresko, V, Lawrence Koresko, Koresko and Associates, P.C., Koresko Financial, L.P., and Penn–Mont Benefit Services, Inc. (collectively "Koresko–Defendants") have filed separate appeals from the order entered in the Philadelphia County Court of Common Pleas, which enforced a prior settlement agreement. We affirm.

The trial court opinion set forth the relevant facts and procedural history of this case as follows:

[STEP] is a fiduciary and plan sponsor of the Step Plan [ & ] Trust, a multiple employer supplemental benefit plan and trust. The claims in this case revolve around an allegedly "unlawful scheme" by [d]efendants to remove [STEP] as a competitor and to wrongfully gain a competitive advantage over plaintiffs.

After a four year blitzkrieg of motion practice, trial in this matter was scheduled to begin on November 3, 2008. With the trial date fast approaching, the parties met with a mediator in an attempt to settle the matter. After two days of mediation, the parties reached an agreement to settle. The parties signed two preliminary term sheets reflecting the settlement, one on September 25, 2008 and one on September 30, 2008. On October 29, 2008, the [c]ourt, having been advised of the settlement by the parties, marked the case settled, discontinued and ended.

After the parties reached the settlement but prior to any distribution of proceeds ..., a group of [STEP] Plan's alleged creditors, the Cahaly Creditors, filed an action in Massachusetts to attach the settlement proceeds to satisfy a judgment obtained in Massachusetts. The United States District Court for the District of Massachusetts granted a [preliminary] injunction on November 21, 2008, enjoining [payment of] the proceeds of this litigation to ... [STEP] for a period of six months.[1] As a result of the Massachusetts Court's injunction, Defendants Virginia Miller, Esq., and Anderson Kill & Olick filed the instant Motion to Enforce Settlement.[5]

---

[5] ... the purpose of the Motion to Enforce Settlement was to prevent [STEP] from reneging on the settlement as a result of the Massachusetts action.

1. By way of extended background, around the time of the mediation and settlement in the present case, the Cahaly judgment creditors initially moved in the Massachusetts state court for a temporary restraining order prohibiting the "Reach and Apply" defendants (insurers: Travelers and Certain Underwriters (also referred to in that record as Lloyd's, London)) from dispersing the Pennsylvania case settlement proceeds to STEP. The Massachusetts state court entered a temporary restraining order. Following entry of that order, the "Reach and Apply" defendants (insurers) removed the case to federal court, based on diversity. The Cahaly judgment creditors then moved in the federal court to extend the state court's temporary restraining order. Following a hearing, the federal court entered its own temporary restraining order, and on November 21, 2008, it entered a preliminary injunction barring the "Reach and Apply" defendants (insurers) from distributing the settlement proceeds to STEP. The injunction was set to expire in six months, but it was subject to extension upon good cause shown. Upon dissolution of the preliminary injunction by its own terms, the Cahaly judgment creditors asked the court to extend the injunction. The court extended the injunction

(Trial Court Opinion, dated June 14, 2009 and filed June 16, 2009, at 1–2) (some footnotes omitted). Although the lawsuit was initiated in March 2004, the Koresko–Defendants did not tender the suit to their insurer, Travelers Property & Casualty Company of America and Travelers Indemnity Company ("Travelers") until September 19, 2007. Thereafter, Travelers agreed to defend the Koresko–Defendants, pursuant to a reservation of rights, and retained defense counsel who represented the Koresko–Defendants until the matter settled in 2008.

Once settlement enforcement proceedings were commenced, Travelers recognized the need to intervene and filed a petition on February 13, 2009, which the court granted on March 18, 2009, for the limited purpose of briefing and arguing the enforceability of the settlement agreement. On April 13, 2009, the court entered the following order: ·

"indefinitely" solely to avoid re-litigation of its merits every few months, but granted leave to STEP to apply to the court for dissolution of the injunction upon new and persuasive evidence showing the improvidence of the injunction. STEP opposed the court's subsequent extension of the preliminary injunction, moved for reconsideration of the extension, and appealed the extension. *See Iantosca v. Benistar Admin Services, Inc.*, 2009 WL 2382750 (D.Mass. July 30, 2009). In denying STEP's motion for reconsideration, the court observed that STEP had changed the purported payee of the Pennsylvania settlement proceeds from STEP to Benistar 419 in an effort to structure the settlement proceeds as to avoid the judgment creditors. *Id.* at *10. The first circuit court of appeals affirmed the preliminary injunction, freezing the settlement proceeds held by the "Reach and Apply" defendants (insurers) until the Cahaly judgment creditors' claims to the proceeds were resolved. *See Iantosca v. Step Plan Services, Inc.*, 604 F.3d 24 (1st Cir.2010). As of August 12, 2010, the third-party claims continue in litigation. *See Iantosca v. Benistar Admin Services, Inc.*, 2010 WL 3219468 (D.Mass. August 12, 2010).

### ORDER

Upon consideration of the Petition to Enforce the Settlement Agreement ..., it is hereby ORDERED that the Petition is GRANTED and that, subject to the Order of the United States District Court for the District of Massachusetts in *Iantosca, et al. v. Benistar Administrative Services, Inc., et al.* (Civil Action No. 08–11785) with respect to the payment of the Settlement Proceeds, the Settlement in this Action is valid, enforceable and binding on the Parties.

(Order entered 4/13/09). On April 15, 2009, STEP timely filed a notice of appeal. The Koresko–Defendants timely filed their appeal on April 16, 2009.

In the appeal docketed at No. 1236 EDA 2009, STEP raises two issues:

WHETHER AN AGREEMENT TO SETTLE SHOULD BE ENFORCED WHEN THE PURPOSE OF SETTLING THE CLAIMS HAS BEEN FRUSTRATED BY THE UNANTICIPATED POTENTIAL SEIZURE OF THE SETTLEMENT PROCEEDS BY A NON–PARTY ALLEGED CREDITOR?

WHETHER AN AGREEMENT TO SETTLE SHOULD BE ENFORCED WHEN AN UNEXPECTED SUPERVENING EVENT HAS MADE PERFORMANCE IMPRACTICABLE, IF NOT IMPOSSIBLE?

(STEP's Brief at 4).

In the appeal docketed at No. 1342 EDA 2009, the Koresko–Defendants raise six issues:

WHETHER THE PURPORTED SETTLEMENT IS BINDING ON THE [KORESKO–DEFENDANTS]?

WHETHER TRAVELERS HAS AUTHORITY TO SETTLE ON BEHALF OF THE [KORESKO–DEFENDANTS]?

WHETHER JUDICIAL ESTOPPEL PRECLUDES TRAVELERS' ASSERTION THAT IT HAS A LEGALLY ENFORCEABLE INTEREST?

WHETHER TRAVELERS FAILED TO ESTABLISH THE PREREQUISITE OF A SUBSTANTIAL INTEREST IN ORDER TO PERMIT IT TO INTERVENE?

WHETHER THE COMMON PLEAS COURT COULD ALLOW TRAVELERS TO INTERVENE WHERE THE FEDERAL COURT EXERCISES JURISDICTION ON THE COVERAGE ISSUE WHICH WOULD DETERMINE IF TRAVELERS HAS A LEGALLY ENFORCEABLE INTEREST?

WHETHER THERE IS A FAILURE OF JURISDICTION?

(Koresko–Defendants' Brief at 5).

 "The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." *Mastroni–Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 517–18 (Pa.Super.2009), *appeal denied*, 605 Pa. 715, 991 A.2d 313 (2010). "With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record." *Id.* at 518.

 The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. There is a strong judicial policy

in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. If courts were called on to reevaluate settlement agreements, the judicial policies favoring settlements would be deemed useless. Settlement agreements are enforced according to principles of contract law. There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum).

Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. This is true even if the terms of the agreement are not yet formalized in writing. Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing. An offeree's power to accept is terminated by (1) a counter-offer by the offeree; (2) a lapse of time; (3) a revocation by the offeror; or (4) death or incapacity of either party. However, once the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such.

*Id.* (internal citations and quotation marks omitted).

### STEP's Appeal

As presented, STEP's issues involve the following claims. STEP admits the parties reached a settlement but argues the agreement can and must be dissolved under the doctrine of frustration of purpose, upon the occurrence of unforeseeable events which have completely destroyed the purpose for the agreement. Specifically, STEP maintains the principal reason it settled the present case was to receive funds so it could pay its legal fees and cover its costs in defending prior lawsuits; and, in exchange for the settlement proceeds, STEP would terminate with prejudice its claims against the defendants. STEP argues the subsequent Massachusetts preliminary injunction and potential seizure of the settlement proceeds by alleged third-party creditors constitute unforeseeable events which have completely destroyed the purpose of the settlement agreement. STEP contends the legal and practical ability of the insurance carriers to pay the settlement proceeds **directly** to STEP was a basic assumption on which the contract was made, but the injunction effectively rendered that direct payment impracticable if not impossible. STEP insists the Massachusetts injunction frustrated the expectations of both parties and this supervening impracticability rendered unenforceable the settlement agreement at issue. STEP concludes the trial court misconstrued and misapplied the doctrine of frustration of purpose and failed to conduct an evidentiary hearing on what was an obvious and demonstrable mistake concerning a crucial factual issue of whether there was a pre-existing judgment against STEP that might prevent STEP from actually receiving the settlement proceeds. For the following reasons, we disagree.

■■■ Pennsylvania law states that, once formed, a settlement will not be set aside except upon "a clear showing of fraud, duress, or mutual mistake." *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 947 (Pa.Super.2004). "Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.... " *Ragnar Benson, Inc. v. Hempfield Tp. Mun. Authority*, 916 A.2d 1183, 1189 (Pa.Super.2007). The court might consider extrinsic or parol evidence to determine the parties' intent only

where the language of the agreement is ambiguous. *Id.*

Nevertheless, Pennsylvania law recognizes certain valid defenses to the performance of contractual obligations:

The doctrine of mutual mistake of fact serves as a defense to the formation of a contract and occurs when the parties to the contract have an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party. A mutual mistake occurs when the written instrument fails to . . . set forth the "true" agreement of the parties. [T]he language of the instrument should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

The Restatement (Second) of Contracts § 152 provides:

§ 152. When Mistake Of Both Parties Makes A Contract Voidable

(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

(2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

Restatement (Second) of Contracts § 152 (1981). Under this section,

[T]he contract is voidable by the adversely affected party if three conditions are met. First, the mistake must relate to a "basic assumption on which the contract was made." Second, the party seeking avoidance must show that the mistake has a material effect on the agreed exchange of performances. Third, the **mistake must not be one as to which the party seeking relief bears the risk.** The parol evidence rule does not preclude the use of prior or contemporaneous agreements or negotiations to establish that the parties were mistaken. However, since mistakes are the exception rather than the rule, the trier of the facts should examine the evidence with particular care when a party attempts to avoid liability by proving mistake. The rule stated in this Section is subject to that in § 157 on fault of the party seeking relief. It is also subject to the rules on exercise of the power of avoidance stated in §§ 378–85.

*Id.* Comment: *a. Rationale* (emphasis added). *See also Loyal Christian Ben. Ass'n v. Bender,* 342 Pa.Super. 614, 493 A.2d 760, 762 (1985) (stating "If this tripartite test is met, the injured party may acquire reformation of the contract or . . . avoid the contractual obligations").

A contract entered into under a mutual misconception as to an essential element of fact may be rescinded or reformed upon the discovery of the mistake if (1) the misconception entered into the contemplation of both parties as a condition of assent, and (2) the parties can be placed in their former position regarding the subject matter of the contract. In other words, mutual mistake occurs when a fact in existence at the time of the **formation** of the contract, but unknown to both parties, will materially affect the parties' performance of the contract.

Section 154 of the Restatement (Second) of Contracts provides:

§ 154. When A Party Bears The Risk Of A Mistake

A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Restatement (Second) of Contracts § 154 (1981). "The rule stated in this Section determines whether a party bears the risk of a mistake for purposes of [Sections] 152 and 153." *Id.* Comment: *a. Rationale.* "Even though a mistaken party does not bear the risk of a mistake, he may be barred from avoidance if the mistake was the result of his failure to act in good faith and in accordance with reasonable standards of fair dealing." *Id.*

A contract [made under] a mutual mistake as to an essential fact which formed the inducement to it, may be rescinded on discovery of the mistake, if the parties [can be] placed in their former position with reference to the subject-matter of it.

Additionally, Pennsylvania law recognizes the doctrine of frustration of contractual purpose or "impracticability of performance" as a valid defense to performance under a contract. The Restatement (Second) of Contracts § 261 provides:

§ 261. Discharge By Supervening Impracticability

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 261 (1981). Additionally, Section 264 of the Restatement (Second) of Contracts states:

§ 264. Prevention By Governmental Regulation Or Order

If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made.

Restatement (Second) of Contracts § 264 (1981). Our Supreme Court has explained:

When people enter into a contract which is dependent for the possibility of its performance on the continual availability of a specific thing, and that availability comes to an end by reason of circumstances beyond the control of the parties, the contract is *prima facie* regarded as dissolved. . . . A court can and ought to examine the contract and the circumstances in which it was made, not of course to vary, but only to explain it, in order to see whether or not, from the nature of it the parties must have made their bargain on the footing that a particular thing or state of things would continue to exist. And if they must have done so, then a term to that effect will be implied,

though it be not expressed in the contract.

Once impracticability of performance or frustration of purpose occurs, it is up to the parties to waive the difficulties or seek to terminate the agreement. If a party proceeds under the original contract, despite the impracticability that would otherwise justify his non-performance, and is then unable to perform as previously agreed, he can be liable for damages. Restatement (Second) of Contracts § 261 (1981). On the other hand, a party who has already performed under a contract, which is dissolved on the ground of supervening impracticability, is generally allowed a claim for restitution to the extent his performance has benefited the other party. Restatement (Second) of Contracts § 272 Comment: *b. Relief including restitution.* In a proper case recovery may go beyond mere restitution and include elements of reliance by the claimant, even though they have not benefited the other party. Under the proper circumstances, "If both parties have rendered some performance, each is entitled to restitution against the other." Restatement (Second) of Contracts § 377.

*Hart v. Arnold,* 884 A.2d 316, 333–35 (Pa.Super.2005), *appeal denied,* 587 Pa. 695, 897 A.2d 458 (2006) (some internal citations omitted; emphasis in original). The Restatement further instructs:

§ 265. Discharge By Supervening Frustration

**Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.**

Restatement (Second) of Contracts § 265 (1981). Thus, a court can excuse performance under a contract upon the occurrence of a truly unexpected event that thwarts the purpose or performance of a contract. *Id.*

■ Another example of excused performance on a contract occurs when the law directly intervenes to make performance impracticable or unachievable; therefore, "if supervening governmental action prohibits a performance or imposes requirements that make it impracticable, the duty to render that performance is discharged, **subject to the qualifications stated in § 261."** *See* Restatement (Second) of Contracts § 264 Prevention By Governmental Regulation Or Order (1981) (emphasis added). *See, e.g., Hart, supra* at 335–37 (using Section 264 to imply basic assumption in contract that independent governmental action would not directly obstruct or prohibit performance of contract). In other words, a party who seeks to use this Section to avoid performance under a contract must be without fault and have observed the duty of good faith and fair dealing by attempting to resolve, where appropriate, the governmental regulation or order. Restatement (Second) of Contracts § 264, Comment: *b. Nature of regulation or order.*

■ On the other hand, if the allegedly unforeseeable event was in reality a natural and fairly predictable risk arising in the normal course of business, then a court may not dissolve a settlement agreement. *Ragnar Benson, Inc., supra.* If the parties' settlement agreement is to take effect only in the event of certain conditions, then those conditions must be expressly contained in the agreement. *Id.* An individual's financial position, for example, cannot generally be an implied "basic

assumption" of a contract, nor will it excuse a party's performance. *See* Restatement (Second) of Contracts § 261 (1981) Comment: *b. Basic assumption.* Illustration 2 (showing that contracting party's financial situation as result of bank failure does not excuse performance on contract); Illustration 3 (showing that contracting party, who discontinues his business because governmental regulations have made business unprofitable, is not excused from his duties under employment contract); Illustration 4 (explaining seller's contractual duty to deliver certain goods is not discharged under frustration of purpose where, as result of creditor's suit against seller, court appoints receiver who takes charge of all of seller's assets prior to delivery; seller must still deliver goods under contract or he is liable for breach of contract). Thus, one party's wholly subjective expectations are insufficient to avoid an otherwise clear agreement. *See American Bank and Trust Co. of Pennsylvania v. Lied,* 487 Pa. 333, 339, 409 A.2d 377, 380 (1979) (affirming Orphans' court's decision to enforce and award specific performance on stock purchase agreement, where enforcement achieved natural and expected purpose of agreement, although some details surrounding enforcement were unanticipated; rejecting frustration of purpose as defense to performance of contract); *Miller v. Ginsberg,* 874 A.2d 93, 99 (Pa.Super.2005) (reiterating principle that settlement agreements are subject to enforcement notwithstanding one party's failure to anticipate related complications prior to performance). The Comment to Section 265 of the Restatement (Second) of Contracts explains:

*a. Rationale.* This Section deals with the problem that arises when a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract. It is distinct from the problem

of impracticability dealt with in the four preceding sections because there is no impediment to performance by either party. Although there has been no true failure of performance ..., the impact on the party adversely affected will be similar. The rule stated in this Section sets out the requirements for the discharge of that party's duty. **First, the purpose that is frustrated must have been a principal purpose of that party in making the contract. It is not enough that he had in mind some specific object without which he would not have made the contract. The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. Second, the frustration must be substantial. It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract. Third, the nonoccurrence of the frustrating event must have been a basic assumption on which the contract was made.** This involves essentially the same sorts of determinations that are involved under the general rule on impracticability....

Restatement (Second) of Contracts § 265 Discharge By Supervening Frustration (1981) Comment: *a. Rationale* (emphasis added). Foreseeability of the untoward event is just one factor in the calculus of discharge by supervening frustration of purpose. *Id.* That a plaintiff's creditors might have an interest in settlement proceeds is just as foreseeable as a third-party's attempt to garnish settlement proceeds. *See Ragnar Benson, Inc., supra;* Restatement (Second) Contracts § 261

(1981) Comment: *b. Basic assumption, supra.*

▮▮▮ In the instant case, STEP concedes it entered into the settlement agreement at issue. Nevertheless, STEP raises a mixed bag of defenses to discharge performance, none of which is availing. Responding to STEP's arguments, the trial court reasoned:

Under the settlement agreement, [STEP's] performance is the discharge of its claims against the defendants. [STEP's] purpose for releasing its claims against [the] defendants may be undermined if a court attaches the settlement proceeds; however, [STEP's] **ability** to discharge its claims against the defendants will not be impaired by said attachment. For this reason, [Section] 261 does not apply to the instant matter.

Additionally, the attachment on any settlement proceeds was foreseeable to [STEP].... The Cahaly Creditors obtained a judgment against [STEP] in December 2002, nearly six years before [STEP] entered into the instant settlement agreement. [STEP] should [have known] whether the Cahaly judgment was satisfied. It is foreseeable that the Cahaly Creditors might try to collect the settlement proceeds in partial satisfaction of their judgment. Because the Cahaly Creditors' actions were foreseeable, the frustration of purpose doctrine does not excuse [STEP's] performance under the terms of the settlement. For the foregoing reasons, the [c]ourt finds the settlement to be enforceable and [STEP's] performance is not excused by the doctrine of frustration of purpose.

(Trial Court Opinion at 4–5) (internal footnote and several citations omitted). We accept the court's analysis.

Although STEP might be irritated over the Cahaly judgment creditors' efforts to attach the settlement proceeds in this case, or annoyed over the delay or possible inability to use the settlement proceeds according to STEP's personal agenda, the Massachusetts' injunction did not "frustrate" the purpose of the settlement agreement or render it impracticable. *See* Restatement (Second) Contracts §§ 261, 265 (1981). The settlement proceeds in the present case did not disappear; the funds merely await distribution as among STEP and/or its putative judgment creditors. In other words, the funds can still be delivered to STEP, if it is successful in the Massachusetts case, or paid to the appropriate entities on behalf of STEP. Regardless of the ultimate disposition as among those competing entities, STEP will derive the economic benefit of the proceeds in one form or another (though perhaps not in the manner STEP might have subjectively hoped for), such that the purpose of the settlement is served (payment of money in exchange for the discharge of claims). Thus, as a practical matter, the Massachusetts litigation has no real bearing on the purpose or enforceability of the settlement agreement at issue in the present case.

Further, STEP's expectation that there would be no attachment to the settlement proceeds was not an express condition of the settlement agreement. It is not enough that STEP wanted to use the settlement proceeds for a specific objective, and that aim was temporarily thwarted. If STEP intended to tie the settlement proceeds exclusively to its own legal fees and costs, then it should have expressly contracted for that effect. *See American Bank and Trust Co. of Pennsylvania, supra; Miller, supra.* Under the circumstances of this case, we conclude that STEP's alleged "frustration of purpose" in this regard does not constitute a valid defense to the settlement agreement.

■ Additionally, the Massachusetts injunction, while extended, was not everlasting; it can be dissolved upon good cause shown. At the outset, the injunction was imposed on the insurers/stakeholders in the Pennsylvania action ("Reach and Apply" defendants in the Massachusetts action) only until the Cahaly judgment creditors' claims were resolved. Similarly, STEP cannot hide under the umbrella of Restatement (Second) of Contracts § 264 Prevention By Governmental Regulation Or Order to imply a basic assumption to the settlement agreement (that STEP would be the sole beneficiary of the settlement proceeds, STEP's creditors would not seek to attach the proceeds, or STEP intended to use the proceeds to pay litigation fees and costs) because Section 264 contemplates a kind of independent governmental action/regulation/order that directly precludes the possibility of contract performance, not one that temporarily delays it. *See Hart, supra.* Therefore, we conclude STEP's contentions merit no relief.[2]

### The Koresko–Defendants' Appeal

The Koresko–Defendants present a number of complaints on appeal. We begin with their sixth and final issue, in which the Koresko–Defendants challenge subject matter jurisdiction by incorporating their arguments from their appeal docketed at No. 420 EDA 2009, which included:

(1) STEP's complaint in this case consisted fundamentally of compulsory counterclaims that should have been raised in earlier suits in other jurisdictions and were therefore precluded under Federal Rule of Civil Procedure 13(a) from being asserted and re-litigated in the current case.

(2) STEP's claims against the Koresko–Defendants for defamation, commercial disparagement, tortuous interference, abuse of process, and malicious prosecution in the current case are subject to federal preemption under ERISA, because they are state law claims that arose out of the federal cases associated with a plan regulated by ERISA ("Employee Retirement Income Security Program").

(3) STEP's current action was a "strike suit" brought in retaliation against the Koresko–Defendants because they had previously represented parties who sued STEP for breaches of fiduciary duties in connection with certain welfare benefit plans STEP administered.

(4) STEP's claims in this case were barred by collateral estoppel, *res judicata* and the law of the case doctrine, as demonstrated by a prior decision involving the same parties, where the court suggested the Koresko–Defendants' litigation efforts against STEP were substantially justified.

(5) STEP is a foreign corporation that failed to properly register in Pennsylvania, and 15 Pa.C.S.A. § 4141 suspended its right to sue, leaving STEP with no standing to sue in state court when it commenced the current action. STEP could not later cure its lack of standing by subsequent corporate registration. Likewise, STEP failed to establish false-

---

2. To the extent STEP suggests "mistake" as a ground to avoid the settlement agreement, STEP failed to establish a mutual mistake related to a basic assumption on which the contract was made or that the alleged mistake had a material effect on the agreed exchange of performances or that the mistake was not one for which STEP bore the risk. *See* Restatement (Second) of Contracts § 152 (1981). Therefore, STEP cannot employ "mistake" as a defense to enforceability of the settlement agreement. Hence, we give STEP's suggestion of "mistake" no further attention.

hoods, causation or damages as a result of the Koresko–Defendants' prior actions. Thus, STEP did not properly plead a Dragonetti Act claim.

(6) Under any theory of recovery, the statute of limitations had run on STEP's claims.

Essentially, the Koresko–Defendants' attacks on subject matter jurisdiction consist of two main theories: preemption and lack of standing to sue.

In their preemption argument, the Koresko–Defendants staunchly insist STEP's claims constituted compulsory counterclaims under the federal rules and the conduct asserted in STEP's case falls squarely within the ambit of ERISA and is integrally related to ERISA. As such, STEP's allegations are preempted by federal law and subject to exclusive federal jurisdiction.

The Koresko–Defendants' "standing" argument is a bit more complicated but rests mainly on STEP's lack of compliance with 15 Pa.C.S.A. § 4141 (governing penalty for foreign corporation doing business in Pennsylvania without certificate of authority). Specifically, the Koresko–Defendants contend STEP had no capacity to sue in state court absent the certificate of authority required of foreign corporations, where none of the STEP plaintiffs was a registered corporation when STEP initiated the suit. The Koresko–Defendants insist STEP's subsequent application for a certificate of authority, while the case was pending, did not cure the defect. For these reasons, the Koresko–Defendants aver any settlement in the case was invalid because STEP had no right to come to court for relief. The Koresko–Defendants complain the court should have addressed these matters long before the case edged toward settlement. Instead, the court improperly allowed the case to proceed to the point where the Koresko–Defendants' insurer felt compelled to settle. The Koresko–Defendants conclude the court's lack of subject matter jurisdiction and STEP's lack of standing to sue renders the settlement agreement void *ab initio*.[3]

In their remaining issues, the Koresko–Defendants challenge Travelers' authority to settle the case and later intervene in the settlement enforcement proceedings. Specifically, the Koresko–Defendants contend Travelers filed a declaratory judgment action in federal court to determine if it had a duty to defend or indemnify the Koresko–Defendants in STEP's action. The Koresko–Defendants maintain that Travelers, by virtue of initiating the declaratory judgment action, was judicially and equitably estopped from exercising any authority to settle STEP's case.

Similarly, the Koresko–Defendants insist Travelers failed to establish a substantial or legally cognizable interest to permit it to intervene in the proceeding to enforce the settlement agreement at issue. The Koresko–Defendants reason the court presumed Travelers' obligation to defend and indemnify, which was still pending in the federal declaratory judgment action. In so doing, the court is said to have impermissibly interfered with the jurisdiction of the federal court. In short, the Koresko–Defendants submit Travelers' participation in the settlement enforcement proceeding now under review was

---

**3.** As presented, the Koresko–Defendants objections to subject matter jurisdiction in the form of collateral estoppel, *res judicata*, law of the case doctrine, failure to state a claim upon which relief can be granted, waiver of rights for failure to assert current claims as compulsory counterclaims in federal court, and expiration of the relevant statutes of limitations, are more in the nature of affirmative defenses, which do not automatically preclude state court subject matter jurisdiction.

superfluous and unauthorized. The Koresko–Defendants conclude the court erred in granting Travelers' the right to intervene in the settlement enforcement proceeding.[4] For the following reasons, we reject all of the Koresko–Defendants' challenges to the court's authority to uphold the settlement agreement at issue.

■■■■ "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented." *Commonwealth v. Bethea*, 574 Pa. 100, 113, 828 A.2d 1066, 1074 (2003), *cert. denied*, 540 U.S. 1118, 124 S.Ct. 1065, 157 L.Ed.2d 911 (2004). *See also* 42 Pa.C.S.A. § 931(a). "The trial court has jurisdiction if it is competent to hear and determine controversies of the general nature of the matter involved *sub judice*." *Bernhard v. Bernhard*, 447 Pa.Super. 118, 668 A.2d 546, 548–49 (1995).

> Issues pertaining to jurisdiction are pure questions of law, and an appellate court's scope of review is plenary. Questions of law are subject to a *de novo* standard of review. Any issue going to the subject matter jurisdiction of a court or administrative tribunal to act in a particular matter is an issue the parties cannot waive by agreement or stipulation, estoppel, or waiver. In other words, the parties or the court *sua sponte* can raise a challenge to subject matter jurisdiction at any time.

*Robert Half Intern., Inc. v. Marlton Technologies, Inc.*, 902 A.2d 519, 524–25 (Pa.Super.2006) (*en banc* ).

Lack of competent jurisdiction to adjudicate an underlying cause of action, however, does not divest a court of the power to enforce a settlement agreement arising from that action. *See, e.g., Klein v. Walton*, 413 Pa.Super. 150, 604 A.2d 1064, 1066 (1992) (affirming state court order **enforcing** settlement agreement reached in federal court action, despite state court's lack of subject matter jurisdiction to adjudicate underlying lawsuit). *See also Nationwide Ins. Enterprise v. Moustakidis*, 830 A.2d 1288, 1292 (Pa.Super.2003) (affirming state court order **enforcing** settlement agreement reached in case subject to arbitration proceeding under parties' contract; holding trial court did not have to compel arbitration on issue of enforcement of settlement agreement). *Compare Schulzendorf v. Pittsburgh & Lake Erie R. Co.*, 340 Pa.Super. 230, 489 A.2d 927 (1985) (holding party cannot **attack,** in state court, settlement reached in federal case).

■■■■ "A party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish ... standing to maintain the action." *Kuropatwa v. State Farm Ins. Co.*, 554 Pa. 456, 460, 721 A.2d 1067, 1069 (1998). *See also Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655 (2005) (stating standing to sue is threshold requirement to judicial resolution of dispute).

> The issue of standing is generally distinguishable from the issue of subject mat-

---

4. We observe that orders allowing intervenor status during ongoing disputes are ordinarily interlocutory and not immediately appealable. *Beltran v. Piersody*, 748 A.2d 715 (Pa.Super.2000) (holding order granting intervenor status to biological father in ongoing custody dispute between mother and another ex-boyfriend was interlocutory and unappealable); *In re Manley*, 305 Pa.Super. 332, 451 A.2d 557 (1982) (holding order allowing interested persons to participate "to the extent necessary" in ongoing dispute is not final appealable order; instead, such order is like evidentiary ruling, which is generally interlocutory and not immediately appealable). Thus, we decline to waive the Koresko–Defendants' challenge to the March 18, 2009 order granting Travelers intervenor status simply because the Koresko–Defendants failed to file an immediate appeal from that order.

ter jurisdiction. *Hertzberg v. Zoning [Bd. of Adjustment of City] of Pittsburgh*, 554 Pa. 249, 255 n. 6, 721 A.2d 43, 46 n. 6 (1998).... *Compare In Re Adoption of W.C.K.*, 748 A.2d 223 (Pa.Super.2000) and *Grom v. Burgoon*, 448 Pa.Super. 616, 672 A.2d 823, 824–825 (1996)[, *appeal denied*, 567 Pa. 745, 788 A.2d 378 (2000) ] (holding issue of standing [is] not distinguishable from subject matter jurisdiction where cause of action is statutory and legislature has designated who may bring action under statute). *In re Duran*, 769 A.2d 497, 501 n. 2 (Pa.Super.2001) (some internal citations omitted). The general principle behind the necessity for standing to sue is "to protect against improper plaintiffs." *Szoko v. Township of Wilkins*, 974 A.2d 1216, 1219 (Pa.Cmwlth.2009).

■■■ The statute governing the powers, duties and liabilities of foreign business corporations in pertinent part provides:

**§ 4141. Penalty for doing business without certificate of authority**

**(a) Right to bring actions or proceedings suspended.**—A nonqualified foreign business corporation doing business in this Commonwealth within the meaning of Subchapter B (relating to qualification) shall not be permitted to maintain any action or proceeding in any court of this Commonwealth until the corporation has obtained a certificate of authority. Nor, except as provided in subsection (b), shall any action or proceeding be maintained in any court of this Commonwealth by any successor or assignee of the corporation on any right, claim or demand arising out of the doing of business by the corporation in this Commonwealth until a certificate of authority has been obtained by the corporation or by a corporation that has acquired all or substantially all of its assets.

**(b) Contracts, property and defense against actions unaffected.**—The failure of a foreign business corporation to obtain a certificate of authority to transact business in this Commonwealth shall not impair the validity of any contract or act of the corporation, shall not prevent the corporation from defending any action in any court of this Commonwealth and shall not render escheatable any of its real or personal property.

15 Pa.C.S.A. § 4141. Under Pennsylvania law, compliance with the registration statute during the course of the lawsuit is sufficient to entitle a foreign corporation to continue its prosecution of that lawsuit. *Empire Excavating Co. v. Maret Development Corp.*, 370 F.Supp. 824 (W.D.Pa. 1974) (interpreting Pennsylvania law). *See also International Inventors, Inc., East v. Berger*, 242 Pa.Super. 265, 363 A.2d 1262 (1976) (stating same, but holding in that case, reversal was necessary due to corporate plaintiff's failure to secure certificate of authority during course of proceedings **and before court granted corporate plaintiff's requested relief**).

■■■ An insurer has a broad duty to defend the insured against all claims potentially within the scope of the insurance policy. *Municipality of Mt. Lebanon v. Reliance Ins. Co.*, 778 A.2d 1228, 1235 (Pa.Super.2001) (citing *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 618 A.2d 945, 953–54 (1992), *appeal denied*, 536 Pa. 630, 637 A.2d 290 (1993)). This "duty to defend" arises, even if it is unclear whether the policy covers a particular claim, and the duty continues "until the claim is narrowed to one **patently outside** the policy coverage...." *Id.* (emphasis added). Thus, "[a]n insurer who refuses to defend its insured from the outset does so at its peril...." *Belser v. Rockwood Cas. Ins. Co.*, 791 A.2d 1216, 1219–20 (Pa.Super.2002).

██ Where the insurer assumes the duty to defend, the insurer can simultaneously challenge whether the claim is covered under the insurance policy, even if the underlying case settles. *Regis Ins. Co. v. All American Rathskeller, Inc.,* 976 A.2d 1157 (Pa.Super.2009). An insurer's defense of the insured, therefore, does not waive the insurer's claims that a policy exclusion applies. *Id.* "It is common practice for insureds and insurance companies to file declaratory judgment actions when there is a dispute regarding whether the insurer has a duty to defend and/or indemnify...." *Id.* 1161 n. 7.

██ In meeting its contractual obligations, an insurer can generally settle the claim on the insured's behalf, even without the insured's consent, if the policy so provides. *Bleday v. OUM Group,* 435 Pa.Super. 395, 645 A.2d 1358 (1994), *appeal denied,* 540 Pa. 591, 655 A.2d 981 (1995) (reviewing cases interpreting impact of insurer's option to make settlements under "deems expedient" or "discretion-to-investigate/settle" policy provisions; contractual right to settle without insured's consent still implies duty of good faith and fair dealing). If the insured freely entered into an insurance contract that gives the insurer the express right to investigate and settle a claim, a challenge to the insurer's decision must show more than just that the insurer settled the claim without the insured's consent. *Id.* Although an express right to settle is not absolute, judi-

cial deference is given to the insurer's decision to settle within the policy limits. *Id.* Such settlements are actually favored, if made in good faith.[5] *Id. Cf. Birth Center v. St. Paul Companies, Inc.,* 567 Pa. 386, 390, 787 A.2d 376, 379 (2001) (holding, *inter alia,* that insurer's refusal to settle claim within policy limits must be justified by "bona fide belief ... that it has a good possibility of winning" at trial; refusal to settle can expose insured to damages in excess of policy limits and insurer might be subject to liability for full amount of excess verdict as well as claims of bad faith[6] and unfair practices; risk of liability in excess of policy limits to both insured and insurer works as incentive to settle). Thus, the presumption in favor of settlement can withstand an insured's objection. 40 P.S. § 1171.5(a)(10)(xv). Additional persuasive authority similarly favors settlement, even if the insured wants to go to trial. *See Caplan, supra* (reversing preliminary injunction that barred former employee and employer's insurer from settling employment discrimination action without insured's consent, where relevant language in insurance policy expressly authorized insurer to settle suit as it deemed appropriate; grant of discretion allowed insurer to evaluate settlement option by considering factors such as likelihood insured would be found liable, cost of maintaining insured's defense, demeanor of witnesses, strength of evidence, and nuisance value of claim, despite insured's opposition to settlement and insured's subsequent in-

---

5. In fact, established Pennsylvania legislative policy provides that insurers may not delay settling third-party claims just because the insured objects. *See* 40 P.S. § 1171.5(a)(10)(xv). *See Caplan v. Fellheimer Eichen Braverman & Kaskey,* 68 F.3d 828 (3rd Cir.1995). Section 1171.5 of the Unfair Insurance Practices Act specifically provides that an insured's objection cannot be the sole basis for refusing to pay a claim unless: (a) The insured claims sovereign, eleemosynary, diplomatic, military service, or other immuni-

ty from suit or liability with respect to such claim; (b) The insured is granted the right under the policy of insurance to consent to settlement of claims; or (c) The refusal of payment is based upon the insurer's independent evaluation of the insured's liability based upon all available information. *See* 40 P.S. § 1171.5(a)(10)(xv)(a)-(c).

6. *See* 42 Pa.C.S.A. § 8371.

ability to pursue future action for malicious prosecution; discretion to settle under such provisions also permits insurer to settle suit **even when suit presents no valid claim against insured**).

Instantly, STEP sued the Koresko–Defendants in state court on various counts of defamation, commercial disparagement, tortious interference, abuse of process, malicious prosecution, and civil conspiracy. We need not examine the Koresko–Defendants' jurisdictional challenges to enforcement of the settlement agreement reached in that case, because the court had the power to enforce the agreement, regardless of whether the court had competent jurisdiction to adjudicate the cause of action.[7] *See Klein, supra.*

Further, the Koresko–Defendants' "standing" argument under 15 Pa.C.S.A. § 4141 fails because, even if STEP lacked the proper certificate of authority to initiate the suit, STEP applied for the certificate during pendency of the suit and settled the suit before any judicial resolution of the case. *See International Inventors, Inc., East, supra; Empire Excavating Co., supra.* In sum, the parties' settlement did not involve any court action. The court's only act was to mark the case settled and later enforce the settlement agreement, which it had authority to do regardless of subject matter jurisdiction. Thus, we

agree with the court's initial comment when it began its opinion by stating that the "factual background of this case is irrelevant to the resolution of the instant matter." (*See* Trial Court Opinion at 1.)

With respect to the Koresko–Defendants' issue on Travelers' right to settle on behalf of the Koresko–Defendants, the court reasoned as follows:

> The Pennsylvania legislature has established the policy that, unless the insurance contract so provides, insurers may not delay settling with third parties on the ground that the insured objects to settlement.... Thus, an insurance company has an affirmative obligation to settle a matter, even if the insured objects, unless one of the [Section 1171.5(a)(10)(xv)(a)-(c) exceptions] is met. In the case *sub judice*, the [Koresko–Defendants] do not claim any type of immunity to the claims against them. Likewise, Travelers' decision to settle based on an independent evaluation of [Koresko–Defendants'] liability has not been challenged. Thus, the only basis on which the [Koresko–Defendants] can challenge Travelers' decision to settle the case is on the grounds that [the Koresko–Defendants] were granted the right to consent to settlement of the claims under the terms of the contract.

---

7. We note the U.S. District Court in the Eastern District of Pennsylvania remanded the case to state court on other grounds, observing with regard to the Koresko–Defendants' ERISA-based preemption arguments: "The [c]ourt ... has serious reservations as to whether it would have subject matter jurisdiction over this matter, even if Defendants' removal was procedurally proper. Plaintiff's Complaint alleges exclusively state law causes of action, and this [c]ourt believes that Defendants' reading of case law discussing ERISA's preemption of state law claims is overly broad." *Step Plan Services, Inc. v. Koresko,* 2005 WL 83262, at *1 n. 1 (E.D.Pa. January

13, 2005). As the district court suggested, the Koresko–Defendants would have to establish a relationship between STEP's state law claims and ERISA before those claims would be preempted. *See Ogontz Controls Co. v. Pirkle,* 346 Pa.Super. 253, 499 A.2d 593, 595 (1985) (holding: "mere mention of a patent ... will not automatically vest the federal courts with exclusive jurisdiction.... [W]here patent rights are only indirectly involved, jurisdiction is properly in the courts of the Commonwealth"). Likewise, the simple mention of ERISA does not inevitably confirm preemption of decidedly state law claims.

Under the terms of the insurance contract, [Koresko–Defendants] were not granted the right to consent to settlement of the claims. Indeed, according to the language of the contract, Travelers expressly retains the right to settle on behalf of the [Koresko–Defendants]. The [Koresko–Defendants'] ... policy reads, "We may at our discretion investigate any 'occurrence' or offense and **settle any claim or 'suit'** that may result." Commercial General Liability Policy, Travelers' Ex. "D," § B(1) p. 4 of 11 (emphasis added). Thus, not only did Travelers have authority to settle as a result of 40 P.S. 1171.5, Travelers also had express authority to settle, at [its] discretion, any suits under the policy. The [Koresko–Defendants] also argue, without citing any supporting precedent, that Travelers lacked authority to settle the case because Travelers filed a declaratory judgment action in which Travelers challenges whether it must cover the claim. This court finds the [Koresko–Defendants'] argument to be unpersuasive and wholly devoid of merit. Travelers provided a defense ... pursuant to a reservation of rights. *See* Reservation of Rights Letter, [dated 11/21/07, at 1–9], Travelers' Ex. "A." While defending the [Koresko–Defendants], Travelers sought a declaration of its rights, in accordance with established Pennsylvania precedent. *See, e.g., [Stidham, supra* at 954]. Under these circumstances, the [c]ourt finds that the filing of the declaratory judgment action by Travelers did not revoke Travelers' authority to settle.

(Trial Court Opinion at 5–7). The record supports the court's decision.

Here, the Koresko–Defendants tendered their defense to Travelers three and one-half years after STEP initiated its suit, although the policy called for prompt notice of the claim. In response to the tender, Travelers retained counsel to represent the Koresko–Defendants and agreed to reimburse the reasonable defense costs and expenses from the date the Koresko–Defendants tendered defense of the lawsuit to Travelers, subject to a reservation of rights. Travelers then initiated a declaratory judgment action in federal court, seeking a decision on whether Travelers owed a duty to defend and/or indemnify the Koresko–Defendants, due to their delay in providing Travelers with notice of STEP's suit as well as certain exclusionary provisions in the policy. The federal court placed that proceeding in deferred status, as Travelers and the Koresko–Defendants agreed.[8] Meanwhile, the present matter settled through mediation, at which time Travelers agreed to pay a confidential amount on behalf of the Koresko–Defendants in exchange for a complete release of all claims against them with prejudice. The settlement left intact the Koresko–Defendants' counterclaims, which they independently withdrew.[9]

---

8. Travelers advised it would not seek reimbursement from the Koresko–Defendants for any amounts Travelers paid to settle or to defend the action.

9. The Koresko–Defendants' act of discontinuing their counterclaims could be viewed as ratification of the settlement. *See Piluso v. Cohen,* 764 A.2d 549, 551 (Pa.Super.2000), *appeal denied,* 568 Pa. 633, 793 A.2d 909 (2002) (holding client ratified attorney's authority to settle by "failing to promptly repu-

diate" counsel's conduct); *Baumgartner v. Whinney,* 156 Pa.Super. 167, 39 A.2d 738, 740 (1944) (holding: "an affirmance of an unauthorized transaction may be inferred from a failure to repudiate it"). When the parties notified the court they had reached a settlement agreement on October 2, 2008, the Koresko–Defendants were under no obligation to drop their counterclaims, which the settlement had left unaffected. *See* Pa.R.C.P. 232. The Koresko–Defendants, however, discontinued those claims days later. They also

Travelers' request for a declaratory judgment on the scope of its obligations *via* declaratory judgment was made according to established procedures. *See Regis Ins. Co., supra; Stidham, supra.* Meanwhile, Travelers had already assumed its obligation to defend the Koresko–Defendants, notwithstanding Travelers' potential coverage issues. *See id.* In the course of its defense on behalf of the Koresko–Defendants, Travelers settled the claim pursuant to its rights under the insurance policy. *See Bleday, supra; Caplan, supra.* Nothing about Travelers' declaratory judgment action judicially or equitably estopped Travelers from settling the STEP action on behalf of the Koresko–Defendants.[10]

■ When it became evident that STEP might try to undo or avoid the settlement agreement, Travelers sought to intervene in the enforcement proceedings. Because Travelers is not estopped from asserting its "legally enforceable interest" in the settlement, the Koresko–Defendants' arguments on intervention are meritless. *See* Pa.R.C.P. 2327 (permitting intervention, *inter alia*, where decision will impose liability for indemnification or may affect any legally enforceable interest). *See also Wilson v. State Farm Mut. Auto. Ins. Co.,* 512 Pa. 486, 492, 517 A.2d 944, 947 (1986) (stating: "[Q]uestion of intervention is a matter within the sound discretion of the court below and unless there is a manifest abuse of such discretion, its exercise will not be interfered with on review"); *Allegheny Anesthesiology Associates, Inc. v. Allegheny General Hosp.,*

826 A.2d 886 (Pa.Super.2003), *appeal denied,* 577 Pa. 684, 844 A.2d 550 (2004) (reiterating like standard). Travelers acted within its contractual rights to settle the claims against the Koresko–Defendants, without their consent, and despite the pending declaratory judgment action. Once the legally cognizable interest in the settlement agreement was manifest, Travelers had the right to intervene in the enforcement proceedings, and the court properly allowed Travelers to do so. Based upon the foregoing, we reject all complaints raised on appeal and affirm the court's order enforcing the settlement agreement.

Order affirmed.

---

delayed contesting the settlement until November 24, 2008, immediately after the Massachusetts court issued its injunction. The Koresko–Defendants' apparent acquiescence followed by their belated challenge, filed only after a favorable decision in another jurisdiction, suggests a form of settler's remorse. *See generally Piluso, supra* (stating litigants who

consent to settlement cannot later act on dissatisfaction or seek compensation from agent for settling case).

10. The Koresko–Defendants cite absolutely no legal authority stating judicial estoppel applies to an insurer as soon as it files a declaratory judgment action.