J-S59031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| REED ASSOCIATES, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| TEKTON DEVELOPMENT CORP. & FLAMM WALTON PC | |
| APPEAL OF: FLAMM WALTON PC | No. 464 EDA 2017 |

Appeal from the Order Entered December 16, 2016
In the Court of Common Pleas of Chester County Civil Division at No(s):
2014-11438

BEFORE: BENDER, P.J.E., OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED SEPTEMBER 22, 2017**

Appellant, Flamm Walton PC, appeals from an order granting summary judgment to Appellee, Reed Associates, Inc., in the amount of $31,278.71. The trial court held that Appellant, a law firm, wrongfully refused to release funds that Appellant held in escrow for Appellee's benefit.  Appellant counters, *inter alia*, that it has a valid charging lien against the funds.  We affirm the order granting summary judgment to Appellee, and we direct the trial court to recompute the amount of prejudgment interest due to Appellee and amend the judgment accordingly.

Tekton Development Corp. ("Tekton"), the general contractor on a construction project for the Pennsbury School District ("School District"),

_____
[*] Former Justice specially assigned to the Superior Court.

hired Appellee as a subcontractor on the project. R.R. 26a.[1] Disputes over the construction project arose between Tekton and the School District and between Tekton and Appellee.[2] Tekton hired Appellant to provide legal services in connection with the disputes. R.R. 92a-94a, The fee agreement required Appellant to bill Tekton hourly for services provided and for Tekton to pay monthly invoices. *Id.*

In late 2010, Tekton resolved its disputes with the School District in a written settlement, agreement ("the Tekton settlement agreement"). R.R. 39a-46a. Section 3 of the Tekton settlement agreement stated with regard to the unpaid contract balance that Tekton owed Appellee:

> **Escrow.** Tekton asserts that only the sum of $28,475.77 is owed to [Appellee]. [Appellee] asserts that a greater amount is owed. Until this dispute is resolved, Tekton agrees that the sum of $28,475.77 will be placed in an escrow account, under the control of [Appellant]. Release of funds held in this escrow account shall be expressly conditioned on full and final resolution, or adjudication of the dispute between Tekton and [Appellee]. Upon such resolution or adjudication, written notice shall be provided to counsel for [the School District], Andrew B. Cohn, Esquire, and written authorization from [the School District] or its counsel shall be required before release of funds from the escrow account.

---

[1] For the parties' convenience, we refer to the reproduced record.

[2] The record does not define the nature of the disputes with great specificity, but it appears that at least part of the dispute concerned the quality of Appellee's work and the amount of Appellee's bills.

R.R. 53a ("the Escrowed Funds provision"). In 2010, Tekton placed $28,475,77 in an escrow account under Appellant's control ("Escrowed Funds"). R.R. 89a, 98a-99a, 107a.

In an email dated March 20, 2014, Appellant wrote to Tekton's president:

> [Appellee], as you know, has contacted us [Appellant] regarding the escrow fund that was established for it several years ago. There is approximately $28,475.77 in escrow. Do you have information verifying the amount owed to them?
>
> In addition, I discovered that Tekton owes us $14,475.77. I would appreciate it if you would remit that payment.

R.R. 143a. Twenty minutes later, Tekton's president responded via email as follows: "Tekton closed up on 1-31-14. I would suggest you pay yourself from the balance and remit the remainder to [Appellee]." *Id.*

In November 2014, Appellee filed suit against Tekton, but Appellee and Tekton subsequently negotiated a settlement in which Appellee accepted $28,475,00.[3] R.R. 26a-31a. On March 10, 2015, Appellee and Tekton entered into a written settlement agreement ("Appellee's settlement agreement"), which stated: "[T]his Agreement shall serve as a directive to [Appellant] to release the Escrowed Funds totaling $28,475.00 to [Appellee] as set forth herein." R.R. 28a.

---

[3] The agreement was silent with regard to the remaining seventy-seven cents held in escrow.

In a letter dated March 26, 2015, Tekton's counsel wrote to counsel for Appellee: "You may use th[is] letter as Tekton's authorization to [] to release to [Appellee] the funds [Appellant] has been holding in escrow." R.R. 35a.

On March 30, 2015, Appellee's counsel provided Appellant with Appellee's settlement agreement and requested that Appellant release the Escrowed Funds to Appellee. R.R. 37a. Further, in compliance with the Tekton settlement agreement, Appellee's counsel requested the School District to approve release of the Escrowed Funds to Appellee. R.R. 48a. In a letter dated April 24, 2015 addressed to Appellant and counsel for Appellee, the School District authorized Appellant to release the Escrowed Funds to Appellee. R.R. 89a-90a. Appellant refused to release the Escrowed Funds to Appellee. R.R. 97a, 100a, 106a, 109a.

On July 16, 2016, Appellee filed a civil complaint naming Tekton and Appellant as defendants. The complaint requested specific performance of Appellee's settlement agreement and asserted a declaratory judgment action against Appellant and an action against Appellant for tortious interference with the Appellee settlement agreement. Tekton did not defend the action, and Appellee entered a default judgment against Tekton on October 13, 2015. R.R. 3a. Tekton is not a participant this appeal.

On March 14, 2016, an arbitration panel entered an award in favor of Appellee in the amount of $29,879.24. Appellant filed a timely appeal from

- 4 -

the arbitration award. Following discovery, Appellee moved for summary judgment against Appellant, and the court granted Appellee's motion for summary judgment in the amount of $28,475.00 plus prejudgment interest of $2,448.04 as of September 30, 2016[4] (plus *per diem* interest of $4.68 thereafter). R.R. 6a. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three issues in this appeal:

> 1. Did the [t]rial [c]ourt err in its application of the law regarding the existence of a charging lien when it granted summary judgement in [Appellee's] favor?
>
> 2. Did the [t]rial [c]ourt err is its application of law regarding its finding that there was no assignment of interest from Tekton to [Appellant]?
>
> 3. Did the [t]rial [c]ourt err in its application of law when it awarded prejudgment interest?

Appellant's Brief at 2.

Our review is governed by the following principles:

> [S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment

---

[4] The record does not indicate why the trial court entered a lump sum of prejudgment interest as of September 30, 2016 and a *per diem* amount of interest thereafter.

where the right to such judgment is clear and free from all doubt. On appellate review, then,

an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals.

*Summers v. Certainteed Corp.,* 997 A.2d 1152, 1159 (Pa. 2010) (citations omitted).

In its first argument, Appellant contends that it has a valid charging lien against the Escrow Funds and therefore did not have to release them to Appellee. We disagree.

Our Supreme Court has held:

[B]efore a charging lien will be recognized and applied, it must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

*Recht v. Urban Redevelopment Authority of City of Clairton,* 168 A.2d 134, 138-39 (Pa. 1961). The trial court correctly reasoned that Appellant failed to satisfy elements (1), (3) and (5) of this test.

With regard to element (1), the fund is not eligible for distribution on "equitable principles" but only in accordance with the express terms of the Tekton settlement agreement. This agreement provides: "Tekton asserts that only the sum of $28,475.77 is owed to [Appellee]. [Appellee] asserts that a greater amount is owed. Until this dispute is resolved, Tekton agrees that the sum of $28,475.77 will be placed in an escrow account . . . ." R.R. 53a. Moreover, the Escrowed Funds cannot be distributed until "full and final adjudication of the dispute between Tekton and [Appellee]" and "written authorization from [the School District] or its counsel." *Id.* The plain language of these terms governs the distribution of the Escrowed Funds, not equitable principles. *See Step Plan Services, Inc. v. Koresko*, 12 A.3d 401, 409 (Pa. Super. 2010) (where settlement agreement contains all requisites for valid contract, court must enforce terms of agreement).

As to element (3), there is no agreement that Appellant could look to the Escrowed Funds instead of Tekton for compensation. The fee agreement between Appellant and Tekton required Appellant to bill Tekton hourly for services provided and for Tekton to pay monthly invoices. R.R. 92a-94a. There is no evidence that Appellant agreed to look to the Escrowed Funds as an alternative source of compensation. Indeed, Appellant acknowledged in an email to Tekton that the Escrowed Funds were for the benefit of Appellee, not Appellant: "[Appellee], as you know, has contacted us regarding the

escrow fund that was established for [Appellee] several years ago . . . ." R.R. 143a.

Finally, as to element (5), no equitable considerations compel application of a charging lien. Appellant entered into an hourly fee compensation agreement with Tekton without bargaining to hold the proceeds of any settlement pending Tekton's payment of Appellant's bills. Appellant contends that Tekton failed to pay monthly invoices and has gone out of business, so Appellant will go unpaid unless it pays itself from the Escrowed Funds. This argument promotes inequity rather than equity—if Appellant collects the Escrowed Funds, Appellee will go unpaid, despite being the designated recipient of these monies.

For these reasons, Appellant's first argument is devoid of merit.[5]

In its second argument, Appellant contends that Tekton assigned the Escrowed Funds to Appellant. We agree with the trial court that Tekton neither assigned nor had the legal right to assign the Escrowed Funds.

Appellant claims that the March 20, 2014 email from Tekton's president to Appellant creates an assignment by stating: "I would suggest you pay yourself from the balance and remit the remainder to [Appellee]." R.R. 143a. The trial court correctly held:

---

[5] We note that while Appellant does not have an equitable right to a charging lien, Appellee does have an equitable right to prejudgment interest, as discussed *infra* at pages 9-10.

> Tekton's president's "suggestion" hardly qualified as legal assignment of any rights. In the settlement agreement of December 23, 2010, Tekton acknowledged that it owed [Appellee] at least $28,475.77, which amount was placed in escrow. On March 20, 2014, Tekton had no legal basis to support its suggestion that Appellant pay itself from this fund. Any release of the escrowed funds was conditioned on the settlement of the dispute between Tekton and [Appellee] and authorization from the [School District], which had not yet occurred. Appellant could not reasonably rely on the contents of this email as a legal assignment by Tekton to pay its legal fees.

Trial Ct. Op., 5/8/17, at 6. Simply put, Tekton's president's "suggestion" cannot override the plain language of the Tekton settlement agreement, which makes clear that Appellee is the intended recipient of the Escrowed Funds.

In its final argument, Appellant objects to the trial court's award of prejudgment interest to Appellee. We hold that this award is proper.

An award of prejudgment interest is a legal right in contract cases, but in non-contract cases, it is an "equitable remedy awarded to an injured party at the discretion of the trial court." *Kaiser v. Old Republic Ins. Co.,* 741 A.2d 748, 755 (Pa. Super. 1999). "[I]t is . . . clear that prejudgment interest may be awarded when a defendant holds money or property which belongs in good conscience to the plaintiff . . . ." *Id.* (citations omitted).

Appellant is not a contracting party to the Tektron settlement agreement, but it is holding funds in escrow that belong to Appellee. Appellant should have distributed the Escrowed Funds to Appellee on April 24, 2015, the date the School District instructed Appellant to release these

funds to Appellee, thus finalizing Appellee's right to the funds under the Tektron settlement agreement. R.R. 53a. Since these monies "belong[] in good conscience to [Appellee]," the trial court acted within its discretion by awarding Appellee prejudgment interest.

When the trial court entered summary judgment on December 16, 2016, it computed prejudgment interest as $2,448.04 as of September 30, 2016 plus *per diem* interest of $4.68 thereafter. R.R. 6a. It appears that prejudgment interest between April 24, 2015 and December 16, 2016 at the annual rate of six percent simple interest amounts to $2,817.86. We direct the trial court to compute prejudgment interest on remand and to enter the correct lump sum of prejudgment interest and the correct total as the judgment in Appellee's favor. ***See Stockton v. Stockton***, 698 A.2d 1334, 1337 n.3 (Pa. Super. 1997) (trial court may modify order more than thirty days after its entry "to correct clerical error or other formal error which is clear on face of record and which does not require exercise of discretion") (citation omitted).[6]

Order affirmed. Case remanded for recomputation of prejudgment interest and amount of judgment in Appellee's favor. Jurisdiction relinquished.

---

[6] Without any citation to legal authority, Appellant made several boilerplate references to the "statute of limitations" in its appellate brief. ***See S.M.C. v. W.P.C.***, 44 A.3d 1181, 1189 (Pa. Super. 2012) (appellant waived appellate review of his claim of error by failing to cite any legal authority in support of his claim).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2017