J-A27003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| BLACKHAWK NEFF, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| KUSEVICH CONTRACTING, INC., | |
| Appellee | No. 1721 WDA 2014 |

Appeal from the Order Entered September 22, 2014
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): G.D. 12-011044

BEFORE:  BOWES, OLSON, AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                **FILED FEBRUARY 29, 2016**

Blackhawk Neff, Inc. ("Blackhawk") appeals from the September 22, 2014 order enforcing a settlement agreement reached by it with Kusevich Contracting Inc. ("Kusevich").  We affirm.

On June 27, 2012, Blackhawk instituted this action against Kusevich, both of which were prime contractors on a construction project for the Pine-Richland School District ("Pine-Richland").  Blackhawk averred in this lawsuit that it incurred damages due to delay on the project attributable to Kusevich.  Specifically, one of Kusevich's sub-contractors, W&K Steel, LLC, was unable to perform its contractual obligations, which were then assumed by a different entity.  Blackhawk averred that W&K Steel, LLC's default caused Blackhawk to start its aspect of the project late and that it incurred increased costs associated with its need to accelerate its schedule to meet

its deadline. Blackhawk pled breach of contract and *quantum meruit* causes of action.

The events pertinent to the inquiry of whether there is an enforceable settlement agreement with respect to this action began on September 19, 2014. On that day, the parties were prepared to proceed to a jury trial with a jury empaneled. Just prior to the start of trial, Blackhawk agreed to accept $30,000 to settle this action. That amount was to be paid by Pine-Richland, which had retained approximately $119,000 that it owed to Kusevich due to this lawsuit. On September 19, 2014, Edward Hirshberg, Esquire, counsel for Pine-Richland, was present in the courtroom. Maurice Nernberg, Esquire, represented Kusevich, and Paul Robinson, Esquire, was Blackhawk's attorney.

The transcript of the proceedings indicates that the court initiated the conversation by stating, "We have an agreement here between the two attorneys." Pre-Trial Proceeding, 9/19/14 and 9/22/14, at 3. The agreement involved Pine-Richland because, as noted, it had withheld payment of $119,000 that it owed to Kusevich due to the pendency of the within action by Blackhawk. Mr. Nernberg, Kusevich's lawyer, was asked to place that accord on the record. He reported:

> Total settlement is $30,000.
>
> We will agree that we will write a letter to Pine-Richland. They will release $30,000. Pine-Richland is withholding one hundred nineteen thousand some odd dollars.

> That upon release, they may release $30,000 to Blackhawk Neff. Blackhawk Neff will write them that they are satisfied to release all funds. If they want to make it conditional on their getting $30,000, that's fine.

*Id*.

At that point, Mr. Robinson, Blackhawk's attorney, interjected and stated, "We are settling the case for $30,000 that Kusevich Contracting is paying. Because Pine-Richland, the School District, is holding the money, we want it to come directly from Pine-Richland." *Id*. at 4. Mr. Robinson continued, "If Pine-Richland for some reason -- and I have already talked with Pine-Richland's attorney who is in the back of the room -- would refuse to pay us, the $30,000, then Kusevich Contracting still must pay the $30,000 because this settlement is with Kusevich Contracting." *Id*. Mr. Robinson also outlined that Pine-Richland could have until the end of the following week to decide whether to participate in the settlement. *Id*. at 6.

Mr. Nernberg then objected to this recitation of the terms of the settlement. He reported that the agreement was that Pine-Richland was to pay Blackhawk the $30,000 directly from the funds that Pine-Richland had withheld from Kusevich and that Kusevich had not agreed to pay the money if Pine-Richland would not agree to release the $30,000 to Blackhawk. Mr. Nernberg stated, "We will write Pine-Richland. We are satisfied to release all funds. Out of the release they can get $30,000. That's all we're doing." *Id*. at 6. Paul Kusevich, who was appearing at trial on behalf of Kusevich, explained that Pine-Richland would have a strong incentive to pay the

- 3 -

$30,000 to Blackhawk. He said, "The only reason Pine-Richland held $119,000 is because of the Blackhawk Neff claim. No other reason. Pine-Richland owes that money to Kusevich. It's an outstanding payable to them that's left over from the contract balance. It's in both people's best interest to get that done." *Id*. at 15. Mr. Kusevich continued that he and Robert Neff, who was owner of Blackhawk and present in the courtroom, were comfortable with the arrangement and wanted to ensure that "when Pine-Richland gets the document, that they understand completely that we jointly both feel the same way that all the moneys should be released. It's over." *Id*. at 16.

Mr. Robinson then acceded to the settlement being structured in that manner. "Maybe that's the way to do it. Make it a contingent settlement. If Pine-Richland doesn't pay the $30,000, then there's no settlement. I would agree with that a hundred percent. I would agree. Give Pine-Richland the opportunity to say yes. Because if they say yes, there's no issue here." *Id*. at 7. Mr. Robinson later confirmed that if Pine-Richland refused to pay the $30,000, "we then can have our trial. There's no settlement. I'm fine with that as well." *Id*. at 14-15.

Since the jury had been selected, the parties did not want the trial continued and the jury to be released. Thus, the court asked Pine-Richland's attorney when he would have a response. Mr. Hirshberg responded, "I can't speak to that today, Your Honor. I can certainly ask the question."

*Id*. at 8.  Mr. Robinson then observed that, since it was a Friday, Pine-Richland could consider the matter over the weekend, and the jurors could be informed to return on Monday in case there was no settlement by that time.

On the afternoon of September 19, 2014, Kusevich and Blackhawk sent a joint letter, executed by Mr. Nernberg and Mr. Robinson, to Pine-Richland.  The letter stated, "Kusevich authorizes Pine-Richland School District to release all funds being held pertaining to the Pine-Richland additions and alterations as follows: $30,000 in the amount held will be released to Blackhawk Neff.  Blackhawk Neff has no further claims against Kusevich Contracting or Pine-Richland School District." *Id*. at 23-24.  The letter was hand-delivered to the solicitor of Pine-Richland that day.

At 7:45 a.m. on Monday September 22, 2014, Pine-Richland's solicitor sent an email to Kusevich and Blackhawk indicating that the board had agreed to release the funds as outlined in the September 19, 2014 letter. That e-mail stated as follows.

Subject: Blackhawk v Kusevich

CONFIDENTIAL: FOR SETTLEMENT PURPOSES ONLY.

Messrs Robinson and Nernberg: I apprised the appropriate representatives of the School District of the settlement terms which were brought over to my office Friday afternoon.  Despite the very short notice, the District was able to reach a consensus as follows:

**The District is willing to make the thirty thousand dollar payment to Blackhawk Neff from the funds (slightly in excess of $119,000) being withheld from Kusevich by the District as a result of the filing of the claim by Blackhawk Neff**.

The District can make that payment within 21 days. However, **the District would like Kusevich to confirm that, in the District making that payment, Kusevich is waiving and releasing that portion of its claim to the funds, up to the settlement amount of $30,000**. In other words, Kusevich agrees that its remaining claim for monies to be released by the District is slightly less than $90,000, or the original Blackhawk Neff claim amount, minus the $30 000 payment to Blackhawk Neff. "Once the parties confirm this agreement, I will contact the District and get the payment process started. Please confirm."

*Id*. at 31-32 (emphases added).

Blackhawk nevertheless attempted to repudiate the September 19, 2014 settlement agreement on three grounds. It asserted that the contract was void in that: 1) the September 19, 2014 settlement agreement mandated that Pine-Richland agree to the accord over the weekend and that its September 22, 2014 assent was untimely; 2) the September 22, 2014 correspondence from Pine-Richland, in which it agreed to the settlement, placed a condition on the accord that was not contemplated by the September 19, 2014 agreement; and 3) the September 19, 2014 accord was procured by duress.

Mr. Robinson first claimed that the parties had agreed on September 19, 2014, that they had to hear from Pine-Richland over the weekend and, since the response was not sent until the following morning, the accord was invalid. After reading the transcript of the September 19, 2014 proceeding,

the trial court rejected the position that it required Pine-Richland to respond over the weekend, and the trial court held that the email sent at 7:45 a.m. on Monday, September 22, 2014, which was before the start of the jury trial, satisfied the terms of the settlement accord.

Blackhawk's second objection to the enforceability of the September 19, 2014 agreement was that Pine-Richland's response placed a condition in the agreement that was not present. Specifically, that condition required Kusevich to agree to waive and release any claims against Pine-Richland. Mr. Robinson suggested that Mr. Nernberg had refused to accept that term imposed by Pine-Richland. Mr. Nernberg immediately denied that assertion. He insisted that he was misquoted and that the "joint letter under joint signatures that was signed on Friday that I believe accomplished" a release of Pine-Richland. *Id*. at 40. Mr. Nernberg repeated that the September 19, 2014 joint letter "accommodates exactly what [Pine-Richland's solicitor is] asking for." *Id*. Mr. Nernberg maintained that Pine-Richland's request that Kusevich sign a release did not constitute "any additional contingency. I think the letter we sent did exactly that." *Id*. Additionally, Mr. Nernberg specifically agreed to reword the document to satisfy the solicitor, stating, "When it comes time to reword a letter, I don't know what she's asking. I'm sure that can be accomplished." *Id*. at 42. The trial court thereafter rejected Blackhawk's position that Pine-Richland's letter imposed a

contingency that rendered the September 19, 2014 settlement agreement void.

Blackhawk's third challenge to the enforceability of the September 19, 2014 accord was that Robert Neff, who had negotiated the agreement on behalf of Blackhawk, had agreed to settle for $30,000 due to duress. Mr. Neff testified that the duress consisted of the following. Mr. Neff and Mr. Kusevich negotiated the settlement alone in a small conference room. Mr. Neff reported that, when they entered the room, Mr. Kusevich started to stare at Mr. Neff, who thought Mr. Kusevich "was going to come across the table." *Id*. at 48. Mr. Neff said that Mr. Kusevich appeared upset and said to Mr. Neff, "[D]o you realize how much money you cost me? I can't believe you did this to me." *Id*.

Mr. Neff reported that he believed that there "could be" a physical altercation. *Id*. Mr. Neff further testified that Mr. Kusevich also threatened to file a lawsuit against Blackhawk based upon the frivolity of this action. After negotiating for about two hours, Mr. Neff stood up to leave, and Mr. Kusevich arose and blocked Mr. Neff's egress from the room. Mr. Neff said that he would have "had to move him or walk around him" to exit the room. *Id*. at 52. Mr. Neff told the court that he then agreed to settle the matter for $30,000 because he "was mentally drained" due to concern for "his bodily safety." *Id*. at 54, 55. Mr. Neff admitted that Mr. Kusevich did not threaten to strike him and had no weapons on his person.

The court then rejected the position that the agreement was procured by duress. In closing, the court stated that the "objection to the settlement is hereby overruled. The case is settled and discontinued. It will be enforced by this Court." **Id**. at 70. This appeal followed. Appellant raises these contentions for our review:

> I. Whether the trial court erred by entering the September 19, 2014 Order of Court on September 22, 2014, which discontinued this lawsuit without any final settlement agreement or disposition of Blackhawk Neff's claims, and without any agreement for Blackhawk Neff, Inc. to receive any money.
>
> II. Whether the trial court erred by entering the September 19, 2014 Order of Court on September 22, 2014 which discontinued the underlying case based upon a contingent settlement agreement that was reached under duress.

Appellant's brief at 3.

Initially, we outline our standard of review:

> "The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." **Mastroni–Mucker v. Allstate Ins. Co.**, 976 A.2d 510, 517–18 (Pa.Super. 2009), *appeal denied,* 605 Pa. 715, 991 A.2d 313 (2010). "With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record." **Id.** at 518.

**Step Plan Servs., Inc. v. Koresko**, 12 A.3d 401, 408 (Pa.Super. 2010).

Settlement agreements are favored in this Commonwealth. **Id**. "There is a strong judicial policy in favor of voluntarily settling lawsuits

- 9 -

because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant." *Id*. at 408-09. Settlement agreements "are enforced according to principles of contract law. There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)." *Id*. at 409. If the agreement "contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. This is true even if the terms of the agreement are not yet formalized in writing. Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing." *Id*.

Blackhawk's first position is that the September 22, 2014 order was erroneous in that there was no "payment, or even a promise of payment to Blackhawk Neff." Appellant's brief at 8. It contends that Kusevich has failed to deliver a release to Pine-Richland and that Blackhawk "cannot even enforce a settlement agreement, as Pine-Richland is not a party to this litigation[.]" *Id*. Blackhawk also maintains that this action was dismissed "without any settlement agreement in place." *Id*. at 9.

Blackhawk materially misrepresents the record. The agreement was plain. Kusevich was admittedly owed approximately $119,000 by Pine-Richland, and Pine-Richland was holding those funds solely due to this lawsuit by Blackhawk against Kusevich. Blackhawk agreed to accept $30,000 of that amount from Pine-Richland to settle this matter. The offer

by Kusevich to settle this case for $30,000 was contingent upon an agreement by Pine-Richland to pay that amount to Blackhawk. On the record, Blackhawk expressly agreed to this offer. Thus, there was an offer and an acceptance. Thereafter, in writing, Pine-Richland's solicitor indicated that she had contacted each member of the Board of Directors of Pine-Richland, and they agreed to pay Blackhawk $30,000 of the funds it was withholding from Kusevich for the project and to pay Kusevich the remainder of the $119,000. Pine-Richland thereby agreed to perform its obligations under the settlement structured on September 19, 2014.

Kusevich did not refuse to sign a release, as requested by Pine-Richland. Mr. Nernberg said repeatedly that he believed that the letter that he sent to Pine-Richland on September 19, 2014 operated to release Pine-Richland once money owed to Kusevich and retained by Pine-Richland was distributed to it and Blackhawk as outlined in the letter. In the September 19, 2014 joint letter, Kusevich authorized Pine-Richland to release to Blackhawk $30,000 of the amount owed to Kusevich and authorized Pine-Richland to pay the remaining amount to Kusevich. Furthermore, Mr. Nernberg specifically stated, on the record, that he would redraft a document that was satisfactory to Pine-Richland in terms of releasing it from any further liability in connection with the distribution of the retained funds. Thus, there was an agreement placed on the record, and all parties assented to its terms. If a release was not executed by Kusevich that satisfied Pine-

- 11 -

Richland, it was solely due to **Blackhawk's** actions herein of contesting the validity of the settlement agreement in the trial court and in this appeal. Kusevich cannot release Pine-Richland until the settlement agreement is upheld.

The essential elements of a contract were assented to by the three parties involved in the settlement agreement. Thus, the fact that a formal settlement agreement and release was to be executed does not render the accord placed on the record unenforceable. As we observed in **Trowbridge v. McCaigue**, 992 A.2d 199, 202 (Pa.Super. 2010) (citation omitted),

> It is well-settled in Pennsylvania that where the parties have settled upon the essential terms and the only remaining act to be done is the formalization of the agreement, the latter is not inconsistent with the present contract.

> Section 26 of the Restatement of Contracts specifically recognizes that parties may bind themselves contractually although they intend, at some later date, to draft a more formal document: Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof.

Herein, the essential elements of the settlement were outlined on September 19, 2014. The contingency was that Pine-Richland had to agree to pay the $30,000 from the retained funds. Pine-Richland assented to that contingency. To effectuate the settlement of this litigation, the three involved parties necessarily need to execute a formal settlement agreement and mutual releases in connection with this matter. Pine-Richland's

indication that it wanted a release did not place a new condition on the settlement agreement. Such a release would be the natural, envisioned result of the accord reached on September 19, 2014.

We also reject Blackhawk's position that the trial court dismissed the case without leaving Blackhawk any recourse. It expressly stated on the record that it would enforce the settlement agreement. In other words, Blackhawk can obtain the $30,000 from Pine-Richland. The fact that Pine-Richland is not a party to this action is irrelevant because the record establishes that it owed over $30,000 to Kusevich, that the funds were being held solely due to this case, and that Pine-Richland expressly agreed to distribute the money that it admittedly owed Kusevich in accordance with the agreement reached on September 19, 2014. Thus, there was an offer and an acceptance on the record, and an enforceable written obligation assumed by Pine-Richland, regardless of whether it was a named party herein. When the trial court specifically stated that it would enforce the agreement, it ensured that Blackhawk would receive the amount that it agreed to accept in settlement of this matter. We therefore reject Blackhawk's first issue.

Blackhawk's second position is that the settlement agreement was unenforceable as it was reached under duress. *See Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943 (Pa.Super. 2004) (a settlement agreement can be set aside based upon, *inter alia*, duress). Duress is

defined as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Adams v. Adams*, 848 A.2d 991, 993 (Pa.Super. 2004).

The record herein fails to establish either restraint or danger. Mr. Neff said that Mr. Kusevich appeared angry and threatened to sue him for bringing this lawsuit, which Mr. Kusevich considered frivolous. Mr. Kusevich did not physically threaten Mr. Neff in any manner. While Mr. Neff suggested that he was prevented from leaving the conference room, this implication is belied by his statement that he could have walked around Mr. Kusevich and left the conference room. Mr. Kusevich did not attempt to strike Mr. Neff and there were no weapons. After the two principals of the companies were in the conference room, everyone proceeded to the courtroom, where Mr. Neff readily could have renounced reaching any agreement. Instead, there were extensive discussions about the accord, including whether Kusevich would pay the $30,000 if Pine-Richland refused to do so. There was no restraint or danger, either actually inflicted or threatened, that was sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness. The trial court correctly rejected Mr. Neff's claim of duress.

We now must address three requests by Kusevich. Kusevich asks for its attorney's fees in this case under Pa.R.A.P. 2744. Appellee's brief at 22. That rule provides:

> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including
>
> (1) a reasonable counsel fee and
>
> (2) damages for delay at the rate of 6% per annum in addition to legal interest,
>
> if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744.

Blackhawk's conduct herein cannot be viewed as dilatory, obdurate, or vexatious, and there is no basis upon which to find that the appeal was taken solely for delay. Thus, Kusevich can prevail in its request for attorneys' fees only if this appeal is frivolous. An appeal is considered frivolous "if the appellate court determines that the appeal lacks any basis in law or in fact." *Gargano v. Terminix Int'l Co., L.P.*, 784 A.2d 188, 195 (Pa.Super. 2001) (citing *Thunberg v. Strause*, 682 A.2d 295, 302 (Pa. 1996)). While the arguments presented herein are not meritorious, we are not prepared to find that the appeal lacked any basis in law or in fact. Hence, we decline to award Kusevich attorneys' fees.

Kusevich also filed two motions with this Court. The first petition was filed on December 2, 2014 and asked this Court to strike Blackhawk's November 26, 2014 response to a rule by this Court to show cause why the appeal should not be quashed. We issued the rule to Blackhawk since the law provides that a party who has acquiesced in an order or judgment will not later be heard to challenge it, and this Court was under the impression that Blackhawk had consented to the order challenged on appeal. On November 26, 2014, Blackhawk responded to the rule, and reported that it had not agreed to the order appealed. The certified record supported this conclusion, and Kusevich was certainly aware of this fact since it was present on September 22, 2014, when Blackhawk raised various challenges to the validity of the September 19, 2014 accord. We then discharged the rule. Blackhawk's response to our rule is not germane, in any respect, to our resolution of this appeal. Hence, Kusevich's petition to strike the response to our rule is denied as moot.

Kusevich filed a second motion with this Court on March 16, 2015 asking that Exhibit 1 and Section II of Blackhawk's reply brief be stricken. In Section II of its reply brief, Blackhawk maintains that the September 19, 2014 agreement cannot be enforced because Kusevich did not execute a release requested by Pine-Richland. In making this argument, Blackhawk relies upon an exhibit attached to the reply brief. That exhibit is a letter from Pine-Richland to Blackhawk and Kusevich requesting that they execute

a release, which is also included in Exhibit 1 to the reply brief. Since the letter and release sent by Pine-Richland are not included in the certified record on appeal and Section II of the reply brief relies upon that document, Kusevich asks that Section II of the reply brief and Exhibit 1 to that document be stricken.

We initially observe that Exhibit 1 cannot be considered by this Court on appeal:

> The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. . . . Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. ***Commonwealth v. Walker***, 878 A.2d 887, 888 (Pa.Super. 2005). In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. ***Commonwealth v. Kennedy***, 868 A.2d 582, 593 (Pa.Super. 2005); ***Lundy v. Manchel***, 865 A.2d 850, 855 (Pa.Super. 2004).

***Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa.Super. 2006).

We additionally note that that there is absolutely no proof that Kusevich is unwilling to execute the release sent by Pine-Richland in order to settle this matter. Indeed, Mr. Nernberg indicated that he anticipated that Kusevich would sign a release that was satisfactory to Pine-Richland. Finally, the trial court has confirmed that it will enforce the September 19, 2014 settlement, which may well entail ordering Kusevich to sign a release drafted by Pine-Richland. Since the letter and release sent by Pine-Richland

are not of record, and there is no proof that Kusevich will not sign the release, and the trial court has stated that it will enforce the settlement agreement, we agree that Section II and Exhibit 1 of the reply brief are not matters that this Court should consider as invalidating the September 19, 2014 accord.

Kusevich's December 2, 2014 petition to strike Blackhawk's November 26, 2014 response to a rule by this Court is denied. Kusevich's March 16, 2015 Application to Strike Section II and Exhibit 1 to Blackhawk's reply brief is granted. The September 22, 2014 order is affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/29/2016