J-A27018-25
J-A27019-25
J-A27020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RALPH YAFFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BOYDS, L.P., KENT GUSHNER, BOYDS GENERAL PARTNER, INC., KJR HOLDINGS, L.P., KJR GENERAL PARTNER, INC. | : | No. 98 EDA 2025 |
| | : | |
| APPEAL OF: KENT GUSHNER, BOYDS, L.P., BOYDS HOLDING COMPANY, INC., BOYDS GENERAL PARTNER, INC., KJR GENERAL PARTNER, INC., KJR HOLDINGS, L.P. AND KENT GUSHNER AS TRUSTEE O/B/O KENT GUSHNER 2004 IRREVOCABLE TRUST | : | |

Appeal from the Order Entered December 11, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 171203238

| | | |
|---|---|---|
| CYNTHIA YAFFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KENT GUSHNER, KJR HOLDINGS, L.P., KJR GENERAL PARTNER, INC. | : | No. 100 EDA 2025 |
| | : | |
| APPEAL OF: KENT GUSHNER, BOYDS, L.P., BOYDS HOLDING COMPANY, INC., BOYDS GENERAL PARTNER, INC., KJR GENERAL PARTNER, INC., KJR HOLDINGS, L.P. AND KENT GUSHNER AS TRUSTEE | : | |

O/B/O KENT GUSHNER 2004
IRREVOCABLE TRUST

Appeal from the Order Entered December 11, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 180800051

| | | |
|---|---|---|
| JEFFREY GLASS AND LISA GLASS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CINDY YAFFE, KJR HOLDINGS, L.P., | : | |
| KENT GUSHNER, BOYDS HOLDING | : | |
| COMPANY, INC., BOYDS GENERAL | : | No. 101 EDA 2025 |
| PARTNER, INC., BOYDS, L.P., KJR | : | |
| GENERAL PARTNER, INC., KENT | : | |
| GUSHNER, TRUSTEE, RALPH YAFFE | : | |
| | : | |
| | : | |
| APPEAL OF: KENT GUSHNER, BOYDS, | : | |
| L.P., BOYDS HOLDING COMPANY, | : | |
| INC., BOYDS GENERAL PARTNER, | : | |
| INC., KJR GENERAL PARTNER, INC., | : | |
| KJR HOLDINGS, L.P. AND KENT | : | |
| GUSHNER AS TRUSTEE O/B/O KENT | : | |
| GUSHNER 2004 IRREVOCABLE TRUST | : | |

Appeal from the Order Entered December 11, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 180903763

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED JANUARY 20, 2026**

Kent Gushner (Kent), personally, and as Trustee on behalf of the Kent

Gushner 2004 Irrevocable Trust (collectively, Gushner); Boyds, L.P., Boyds

Holding Company, Inc., and Boyds General Partner, Inc. (collectively, Boyds);

and KJR General Partner, Inc., and KJR Holding, L.P. (collectively, KJR)

(Gushner, Boyd, and KJR collectively referred to as Appellants); appeal from the December 11, 2024, order granting the motion to enforce a settlement agreement (the enforcement motion), which was executed by Appellants, Lisa Glass (Ms. Glass) and Jeffrey Glass (collectively, the Glasses), and Ralph Yaffe and his wife, Cindy Yaffe (Ms. Yaffe) (collectively, the Yaffes) following judicial mediation. After careful consideration, we affirm in part, vacate in part, and remand for the trial court to order the drafting of a final settlement agreement.

As described by the trial court, "Boyds is a retail clothing business that the Gushner family has owned and operated for more than 80 years." Trial Court Opinion, 3/3/25, at 3. Siblings Kent, Ms. Glass, and Ms. Yaffe, and their respective spouses, are parties in the three related cases on appeal: **Yaffe v. Gushner, et al.**, Case No. 1808-51 (No. 1808); **Glass v. Gushner**, **et al.**, Case No. 1809-3763 (No. 1809); and **Yaffe v. Boyds General Partner, Inc. et al.**, Case No. 1712-3238 (No. 1712). The trial court consolidated the cases on June 16, 2020. Trial Court Order, 6/16/20.

The parties' litigation was contentious, and ultimately, the matter proceeded to judicial mediation:

> On February 28, 2023, [the trial court] appointed the Honorable John W. Herron (Retired) [(Judge Herron or the mediator)] ... to mediate the consolidated cases. On April 20 and 21, 2023, [the Glasses] and their counsel[,] and [Appellants] and their counsel[,] executed a document titled, Boyds Mediation (Privileged) Term Sheet (the "Term Sheet").
>
> **On April 24, 2023, the Yaffes were presented with a settlement offer, the terms of which were outlined in the**

- 3 -

> **Term Sheet already signed by the Glasses and** [**Appellants**].
> The Term Sheet required the Yaffes to sign it on or before April
> 28, 2023.  The Term Sheet expressly gave Kent [] the right to
> cancel [the offer] without any liability or exposure if the Yaffes did
> not join and execute the agreement or refused the same terms
> and conditions on or before April 28, 2023.

Trial Court Opinion, 3/3/25, at 3-4 (emphasis added).

Significantly,

> **On April 27, 2023, the Yaffes signed the** [] **Term Sheet with
> the notation, "Subject to the execution of settlement and
> related documentation satisfactory to the Yaffes," and
> transmitted it to the other parties the same day.**  ([**Glass v.
> Gushner**, 2/19/24, Term Sheet, at pg.] 4, Yaffes' signature line.)

The parties [identified] in the Term Sheet agreed to:

- Settle, discontinue, and end all pending litigation among
  the parties "upon signing a Final Settlement Agreement
  including the following terms and conditions and
  additional terms as the parties and their counsel deem
  appropriate to end and settle the litigation."  ([Term
  Sheet,] Introductory Paragraph.)

- Payment of a specific sum of money by Kent [] and the
  Boyds' interests to the Yaffes and [the] Glasses for their
  respective ownership interests in Boyds.  (**Id.** at ¶ 1.)

- The creation of two escrow funds with specific dollar
  amounts to be funded at closing for the benefit of
  [Appellants,] the Glasses[,] and the Yaffes to promote
  good behavior and safeguard the reputation of Boyds.
  (**Id.** at ¶¶ 2 and 3.)

- Distribution of the assets of the estate and trust of
  Gerald Gushner in accordance with a Family Settlement
  Agreement to be submitted to Orphans' Court for
  approval.  (**Id.** at ¶ 4.)

- Final Approval by the bank (which already had preliminarily approved the terms and conditions in the Term Sheet) of the final settlement agreement before execution in accordance with the loan agreement. (***Id.*** at ¶ 6.)

- Designation of Judge Herron to draft the final agreement with drafting disputes to be resolved by Judge Herron. (***Id.*** at ¶ 7.)

Trial Court Opinion, 3/3/25, at 4 (emphasis added; punctation modified).

On November 14, 2023, the Yaffes, joined by the Glasses, filed the instant enforcement motion, to which Appellants filed a response. On June 12, 2024, the trial court issued a rule upon Appellants to show cause why the relief sought by the Yaffes and the Glasses should not be granted, and scheduled the matter for an evidentiary hearing. Trial Court Order, 6/12/24.

The trial court described what next transpired:

On June 21, 2024, [Appellants] filed a Motion to Enforce the Mediation Privilege ("Mediation Privilege Motion"), seeking to exclude from consideration at the upcoming hearing all documents and communications that were part of the mediation process, including the Term Sheet. [***Glass v. Gushner***, Mediation Privilege Motion, 6/21/24]. [Appellants] relied upon the Mediation Privilege codified at 42 [Pa.C.S.A. §] 5949 … and a Confidentiality and Mediation Agreement signed by the parties on July 27, 2021.

On August 29, 2024, the [trial court] granted the Mediation Privilege Motion in part[,] and denied it in part, holding that the Pennsylvania mediation privilege applied to all mediation documents and communications except for the Term Sheet. [***Glass v. Gushner***, Mediation Privilege Motion, 8/29/24.] **The [c]ourt held that it could consider the Term Sheet itself to determine if it is a valid and enforceable contract.** [***See id.***]

… [The enforcement motion hearing took place on September 5, 2024.] On the day of the hearing, **after the parties agreed on**

- 5 -

**the record that the Term Sheet was unambiguous and that there were no disputed issues of fact**, the [trial court] **heard oral argument on whether the Term Sheet is enforceable**. [N.T., 9/5/24, at 4, 17-18, 42, 43-44.]

On December 11, 2024, the [c]ourt granted the [enforcement motion] …, denied [a] motion for limited stay[,] and denied as moot [an outstanding] summary judgment motion filed by Appellants] in **Yaffe v. Boyd General Partner, Inc., et al.**, Case No. 1712…, **Yaffe v. Gushner, et al.**, Case No. 1808 …, and **Glass, et al. v. Gushner, et al.**, Case No. 1809…. 12/11/24, Order and Opinion. Additionally, the [c]ourt ordered that the cases be marked settled, discontinued and ended. [**Id.**]

On January 7, 2025, [Appellants] timely appealed the order dated December 11, 2024. … Additionally, [Appellants] appealed the order dated August 29, 2024, which granted in part and denied in part the Mediation Privilege Motion.

Trial Court Opinion, 3/3/25, at 5-6 (emphasis added; footnotes and some citations omitted; format of citations modified). Appellants and the trial court have complied with Pa.R.A.P. 1925.

Appellants present the following issues for our review:

1. Whether the trial court committed an error of law in finding that a Term Sheet was a binding settlement agreement rather than a non-binding agreement to agree[?]

2. Whether the trial court committed an error of law in concluding that [the Yaffes] "accepted" a written settlement offer[,] although they added additional language imposing a new and substantive term rather than accepting the "offer" without reservation or alteration, and/or that the additional language was a "condition" that they could unilaterally waive or withdraw, after the fact, by filing a motion to enforce[?]

Appellants' Brief at 5 (capitalization modified).[1] Because the issues are related, we address them together.

**Appellants' Argument**

Appellants first claim the trial court erred in granting the enforcement motion, "because the parties intended the Term Sheet to be a mere agreement to agree." *Id.* at 29 (capitalization modified). Appellants argue that the language of the Term Sheet demonstrated no intention by the parties to be bound by its terms, "and any construction to the contrary nullifies multiple provisions of the Term Sheet." *Id.*

Appellants direct our attention to the designation, in the Term Sheet's title, as a "Privileged" mediation document. *Id.* at 30. Appellants assert,

> [t]hat title was legally significant—it reflected the parties' and mediator's intention not only to comply with the requirements of 42 Pa.C.S.A. § 5949(b)(1) to "express in the document … that it is unenforceable or not intended to be legally binding," but also to treat the document as covered by the [] confidentiality and Mediation Agreement. And *that* Agreement stated that "the *entire*" mediation process is confidential and absolutely privileged as to any pending or future litigation case," and that any statements made during the mediation process were "without prejudice" to the parties' rights and were "inadmissible *for any purpose* in any legal proceeding." …

*Id.* at 31 (emphasis in original; citation omitted). According to Appellants, if the parties and mediator had intended the Term Sheet to be a binding

---

[1] Appellants abandoned any challenge to the order granting in part, and denying in part, the Mediation Privilege Motion.

settlement agreement, it would not be styled as a "draft" and "privileged."

*Id.*

Appellants direct our attention to language in the Term Sheet, which provides that litigation between the parties would not be settled, discontinued, or ended until a separate, final agreement was reached and executed. *Id.* at 32. Appellants claim the inclusion of this language indicated that any settlement would be reached through a final settlement agreement, not by execution of the Term Sheet. *Id.* In support, Appellants point to extrinsic evidence that the Yaffes subsequently presented a draft final settlement agreement that identified provisions the Yaffes would deem satisfactory, which were not included in, or contradicted by, the Term Sheet. *Id.* at 32-33.

Appellants list "additional terms" not included in the Term Sheet, as well as obligations that would not vest until execution of a final settlement agreement. *Id.* at 33-34. According to Appellants,

> the Term Sheet, by its plain terms, conditions the enforceability of *any* obligations described therein upon the parties' agreement that the "Final Settlement Agreement" as drafted by the mediator's "legal designee" and with all "drafting disputes" to be "resolved by Judge Herron," and then *only* if Boyds' lender gave "final approval" of that "final settlement agreement."

*Id.* at 35 (emphases in original). Appellants assert that the Term Sheet's contemplation of a future agreement on additional terms, and its conditioning enforceability on execution of a final settlement agreement, renders the Term

Sheet "an agreement to agree at a later date, which Pennsylvania [c]ourts routinely hold unenforceable." *Id.* at 36.

Appellants refer to the conduct of the parties and the mediator from April 27, 2023, through November 2, 2023, as demonstrating that no one considered the Term Sheet to be binding. *Id.* at 37. As further support, Appellants point out exhibits attached to the enforcement motion, subsequent trial court orders, and subsequent motions practice between the parties following the Term Sheet's execution. *Id.* at 38-39.

Appellants argue the trial court's reliance on *Field v. Golden Triangle Broadcasting, Inc.*, 305 A.2d 689 (Pa. 1973), and *Toppy v. Passage Bio, Inc.*, 285 A.3d 672 (Pa. Super. 2022), is misplaced. Appellants' Brief at 40. Appellants assert that in *Field*, the Supreme Court reviewed the parties' course of dealing and actions in determining that the parties intended a letter agreement to be a binding contract. *Id.* at 40-41. Appellants claim that here, the record contains no evidence that the parties intended to be bound by the Term Sheet. *Id* at 41. According to Appellants, the Term Sheet expressly stated that the parties would end the outstanding litigation only upon the signing of a final settlement agreement. *Id.*

Appellants also distinguish this Court's decision in *Toppy*, arguing that in *Toppy*, this Court found an agreement based upon the acceptance of two terms during mediation, and the parties' agreement to a third term in a subsequent email exchange. *Id.* at 42. According to Appellants, the *Toppy*

- 9 -

Court concluded that immaterial "tweaks" included in the email exchange did not render the agreement non-binding. *Id.* Appellants contrast the circumstances in *Toppy* with those in the instant case where, "by the Term Sheet's plain terms, the parties did *not* agree to all terms needed to resolve their various disputes …." *Id.* (emphasis in original). Appellants claim the Term Sheet left additional terms open for negotiation, appointing the mediator as the person to resolve additional "drafting disputes." *Id.* at 43.

In their related second issue, Appellants argue that the Yaffes' inclusion of a notation next to their signatures on the Term Sheet ("subject to the execution of settlement and related documentation satisfactory to the Yaffes"), constituted a rejection of a key provision of the Term Sheet. Appellants' Brief at 43-44. Appellants claim this language negated paragraph 5 of the Term Sheet, which required the Yaffes to accept the Term Sheet "*without any modification.*" *Id.* at 44 (emphasis in original). Appellants contend that the Yaffes' "purported acceptance" was made dependent on the Yaffes' assent to additional terms, thereby constituting a rejection of the Term Sheet's offer. *Id.*

Appellants claim the trial court erred in not considering the Yaffes' notation to be a counter-offer. *Id.* Appellants argue

> the Yaffes' purported acceptance of the Term Sheet was not a mirror-image acceptance according to the terms proposed to them. Instead, the Yaffes inserted a wholly new condition, proposing to empower the Yaffes to reject any final settlement agreement they unilaterally deemed not "satisfactory" – a

- 10 -

condition directly at odds with ¶ 5 of the Term Sheet itself. Thus, even if the Term Sheet was an offer to enter into a binding contract, the Yaffes did not accept the Term Sheet unequivocally, but instead submitted [a] counteroffer.

*Id.* at 45.

Appellants finally dispute the trial court's determination that the Yaffes abandoned any purported "counteroffer" by filing their enforcement motion. *Id.* at 46. Appellants claim the Yaffes' subsequent filings and actions demonstrate that the Term Sheet was not final. *Id.*

### The Glasses' Argument

The Glasses argue that the Term Sheet constitutes a binding agreement. Glasses' Brief at 20. The Glasses contend that Appellants' attempts to distinguish *Field* and *Toppy* are unavailing where, as here, Appellants agreed the Term Sheet was unambiguous and no extrinsic evidence could be considered. *Id.* at 23.

The Glasses contend the Term Sheet includes all essential terms "necessary to effectuate" Boyd's purchase of the Glasses' and [the] Yaffes' respective interests, including the amounts and timing of compensation; the distribution of inheritances; the mechanism to prevent disparagement; and the establishment of escrow funds. *Id.* at 24. According to the Glasses,

[i]f the parties have agreed on the essential terms, the contract is enforceable even though recorded only in an informal memorandum that requires future approval or negotiation of incidental terms.

- 11 -

*Id.* at 28 (quoting *Helpin v. Trustees of Univ. of Pa.*, 969 A.2d 601, 611 (Pa. Super. 2009)).

The Glasses claim that the Term Sheet's failure to specify a closing date does not negate its enforceability. *Id.* at 29. Quoting *Field*, the Glasses assert that "where no time for performance is provided in the written instrument[,] the law implies that it shall be done within a reasonable time[.]" *Id.* (quoting *Field*, 305 A.2d at 694).

The Glasses object to Appellants' reliance on conduct, filings and evidence outside of the four corners of the Term Sheet. *Id.* at 32. The Glasses assert that at the enforcement motion hearing, Appellants agreed an evidentiary hearing was unnecessary, because the Term Sheet is unambiguous. *Id.* at 32-33. According to the Glasses, Appellants are barred from asserting a contrary position on appeal. *Id.* at 34.

**The Yaffes' Argument**

The Yaffes similarly argue that the trial court's enforcement order is supported by the plain language of the Term Sheet. Yaffes' Brief at 15 (unpaginated). The Yaffes claim Appellants improperly identified extrinsic evidence of missing contractual terms for the first time on appeal. *Id.* According to the Yaffes, "the time to make claims that the Term Sheet was 'missing' essential terms" was at the enforcement motion hearing. *Id.* at 16 (unpaginated).

The Yaffes direct our attention to Appellants' counsel's statement at the enforcement motion hearing that "I don't think under the law the [c]ourt can consider extrinsic evidence when ruling on the content of an indisputably clear document…." *Id.* at 17 (unpaginated) (citation omitted). The Yaffes claim Appellants repeatedly refused the opportunity to present extrinsic evidence, including their assertion that they need their bank's approval of a final settlement. *Id.* at 19.

The Yaffes contend the Term Sheet identified the terms for Appellants' purchase of the ownership interests of the Yaffes and the Glasses. *Id.* at 21 (unpaginated). According to the Yaffes, Appellants tendered this offer, and the Yaffes and the Glasses accepted the offer, in the manner required by the Term Sheet. *Id.* at 22-23 (unpaginated). The Yaffes explain that the notation next to their signatures ("[s]ubject to the execution of settlement and related documentation satisfactory to the Yaffes") made no material alteration to the terms and conditions of the offer. *Id.* at 24. According to the Yaffes, the Term Sheet itself provided for the preparation of a final settlement agreement. *Id.* Finally, the Yaffes claim that the Term Sheet includes adequate consideration and evidences a meeting of the minds. *Id.*

### Standard of Review

"The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Step Plan*

*Servs., Inc. v. Koresko*, 12 A.3d 401, 408 (Pa. Super. 2010) (citation

omitted).

> Our standard of review over questions of law is *de novo* and to
> the extent necessary, the scope of our review is plenary as [the
> appellate] court may review the entire record in making its
> decision. With respect to factual conclusions, we may reverse the
> trial court only if its findings of fact are predicated on an error of
> law or are unsupported by competent evidence in the record.

*Id.* (citations and quotation marks omitted).

### Contract Interpretation

As our Supreme Court has explained, "settlement agreements are

governed by contract law principles." *Lesko v. Frankford Hosp.-Bucks*

*County*, 15 A.3d 337, 341-42 (Pa. 2011) (quoting *Mazzella v. Koken*, 739

A.2d 531, 536 (Pa. 1999)). The fundamental rule in contract interpretation

"is to ascertain the intent of the contracting parties. In cases of a written

contract, the intent of the parties is the writing itself." *Harley v.*

*HealthSpark Found.*, 265 A.3d 674, 684 (Pa. Super. 2021) (citation

omitted).

> [**W**]**hen a written contract is clear and unequivocal, its
> meaning must be determined by its contents alone**. It
> speaks for itself and a meaning cannot be given to it other than
> that expressed. Where the intention of the parties is clear, there
> is no need to resort to extrinsic aids or evidence. Hence, where
> language is clear and unambiguous, the focus of interpretation is
> upon the terms of the agreement as manifestly expressed, rather
> than as, perhaps, silently intended.

*Lesko*, 15 A.3d at 342 (citation and original emphasis omitted; emphasis

added).

In a settlement agreement,[2] "[t]here is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)." **Step Plan Servs.**, 12 A.3d at 409 (citation omitted). "As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the agreement." **Mazzella**, 739 A.2d at 536 (quotation marks, citation, and brackets omitted).

> Pennsylvania law states that, once formed, a settlement will not be set aside except upon a clear showing of fraud, duress, or mutual mistake. Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement…. The court might consider extrinsic or parol evidence to determine the parties' intent only where the language of the agreement is ambiguous.

**Step Plan Servs.**, 12 A.3d at 409-10 (quotation marks and citations omitted)

### Trial Court's Interpretation of the Term Sheet

In its opinion, the trial court recognized that,

> [t]o form an enforceable contract, there must be an offer, acceptance, and consideration or mutual meetings of the minds. … The Term Sheet in this case satisfies all these essential elements.

---

[2] "There is a strong judicial policy in favor of voluntarily settling lawsuits." **Felix v. Giuseppe Kitchens & Baths, Inc.**, 848 A.2d 943, 946 (Pa. Super. 2004) (citation omitted). "The primary reason that settlement is favored is that it expedites the transfer of money into the hands of a complainant. Further, settlement reduces the burden on and expense of maintaining courts." **Id.** (citations omitted).

[Appellants] and the Glasses made an offer to the Yaffes that was specific and definite. (*Glass v. Gushner*, … Term Sheet at ¶¶ 1, 3). [Appellants] agreed to buy the Glasses' and the Yaffes' ownership interests in Boyds for a specific price with specific payment terms. (*Id.*) The Yaffes accepted the offer before it expired, which is a manifestation of assent to the terms of the offer made by [Appellants] and the Glasses. (*Id.*, p. 4 at signature page.) Finally, the Term Sheet is supported by adequate consideration[,] as it provides for specific benefits to the Yaffes and [the] Glasses for their respective interests in Boyds. (*Id.* at 1, 3.) *See Weavertown Transp. Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003) (consideration consists of a benefit to the promisor or a detriment to the promisee.)

Trial Court Opinion, 3/3/25, at 9.

## Enforceability of the Term Sheet

Our review discloses that the Term Sheet (offer) provided, in its introductory paragraph, that Appellants

hereby agree to settle, discontinue, and end all pending litigation **upon signing a Final Settlement Agreement** including the following terms and conditions and additional terms as the parties and their counsel deem appropriate to end and settle the litigation.

Term Sheet, 4/21/23, introductory paragraph (emphasis added).

The Term Sheet identified a specific dollar amount that Appellants will pay to the Glasses in exchange for the ownership interests of the Glasses and the Yaffes, with a breakdown of the timing of various payment installments. *Id.* ¶ 1. The Term Sheet further provided for the creation of escrow accounts to secure "the good behavior of the Seller parties [(the Yaffes and the Glasses)] and safeguard the business reputation of Boyds[.]" *Id.* ¶ 2. The

- 16 -

Term Sheet included the specifications for each escrow account, including their amounts and duration, and provided that compliance with the conditions set forth in the Term Sheet will be determined by Judge Herron. *Id.* ¶¶ 2(A)-(B), 3(A)-(B).

> The Term Sheet further provided,
>
> [a]ll the above terms and conditions herein will be the same terms and conditions offered to [the Yaffes] including as provided in paragraph 1 if the Yaffes agree to this proposal. (Footnote 1).
>
> **Footnote** 1[:] The only modifications that exist to [S]ellers is the payment for Boyds' business that have different ownership percentage interest for [the Glasses] and [the Yaffees,] which will be adjusted at the closing.

*Id.* ¶ 3.

The Term Sheet acknowledged the preliminary approval of the Term Sheet by Appellants' bank, and noted that the terms and conditions are subject to the bank's approval of the final settlement agreement between the parties. *Id.* ¶ 6.

The Term Sheet provided the means to resolve any disputes arising during the drafting of the final settlement agreement: "Judge Herron's legal designee shall draft the final agreement … with all drafting disputes to be resolved by Judge Herron." *Id.* ¶ 7. The Term Sheet allowed for the inclusion of additional terms, as agreed upon by the parties, but did not condition the Term Sheet's enforceability on any additional terms. *Id.* (introductory paragraph).

The Term Sheet provided, "This Term Sheet shall be executed by the [parties] on or before April 28, 2023, **or it is null and void**." ***Id.*** ¶ 8 (emphasis added). It is undisputed that the Yaffes signed the Term Sheet on April 27, 2023. ***See id.***, signature page.

As Appellants correctly observed, the Yaffes added the following language next to their signatures: "Subject to the execution of settlement and related documentation satisfactory to the Yaffes." ***Id.*** However, the Yaffes identified no additional or contrary terms beyond the recognition of a provision already stated in the Term Sheet, *i.e.*, that a final settlement agreement would be drafted in accordance with the Term Sheet.

We disagree with Appellants' challenge to the trial court's reliance on ***Field*** and ***Toppy***. In ***Field***, which involved the sale of radio stations, the appellant argued that a letter agreement did not constitute an enforceable contract, but "merely an arrangement of terms in contemplation of agreement on a formal contract." ***Field***, 305 A.2d at 693. The appellant pointed out that the letter agreement included the following language, which, the appellant claimed, indicated the lack of a binding agreement:

> The opening sentence of the letter, which states: "*Subject to agreement on a formal contract* containing the provisions hereinafter set forth…." (Emphasis added.)
>
> Paragraph 1(a), which provides: "We will pay $ 175,000 cash at closing. Of this amount, $ 25,000 will be placed in escrow *at the time of signing a formal contract*…." (Emphasis added.)

> On the bottom of page 1 of the letter, where it is provided: "If an existing corporation becomes the Buyer and if its stock cannot be so pledged, Seller shall have the right to examine such buying corporation's balance sheet *prior to execution of a formal contract* and, if such balance sheet is not satisfactory to him, shall then have the right to void this entire transaction." (Emphasis added.)
>
> The language on the last page, which states: "As evidence of our good faith, we attach herewith our check in the amount of $ 10,000 made payable to Blackburn & Co., Inc. *If this offer is accepted and a formal contract is agreed to*, this amount will become part of the escrow payment mentioned above. *If this offer is not accepted or if a formal contract is not agreed to*, this check will be returned to us without any obligation." (Emphasis added.)

*Field*, 305 A.2d at 693 (emphasis in original). Our Supreme Court concluded there was an enforceable agreement:

> [T]he chancellor had ample justification in concluding that the letter agreement itself, by its terms, formality and the extraordinary care in its execution, indicates that the signatories intended to bind themselves to an enforceable contract.
>
> Moreover, "it is well-settled in Pennsylvania that where the parties have settled upon the essential terms and the only remaining act to be done is the formalization of the agreement, the latter is not inconsistent with the present contract…." *Melo-Sonics Corp*[.] *v. Cropp*, 342 F.2d 856, 859-60 (3d Cir. 1965). Similarly, as this Court noted in *Goldman v. McShain*, …247 A. 2d 455, 459 ([Pa.] 1968): "Section 26 of the Restatement of Contracts specifically recognizes that parties may bind themselves contractually although they intend, at some later date, to draft a more formal document: '**Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof**; ….' Restatement, Contracts § 26."

*Field*, 305 A.2d at 693 (emphasis added; some citations omitted). Although

the appellant argued the letter agreement did not include "many other"

material terms customarily included in a sales contract, our Supreme Court

concluded their absence was not controlling:

> What is necessary is that the parties agree to all the essential terms and intend the letter to be binding upon them. We believe that the letter agreement in question manifests such agreement and intention.

*Id.* at 694.

In *Toppy*, an employment dispute, the appellant filed a complaint

alleging that his former employer violated a settlement agreement that had

resolved the appellant's wrongful termination claims. *Toppy*, 285 A.3d at

677. The appellant claimed that during mediation, he proposed three terms

for settling his dispute with his former employer (former employer). *Id.* at

683. Former employer agreed to two terms during the mediation. *Id.* The

third term required former employer to issue 150,000 shares of common stock

in exchange for 448,623 stock options given to the appellant during his term

of employment. *Id.* at 684. After mediation, the mediator informed the

appellant that former employer had agreed to all three terms. *Id.* The email

included additional "tweaks." *Id.* These "tweaks" prohibited the appellant

from working for a competitor, and a modification to a letter of

recommendation for the appellant. *Id.*

Former employer filed preliminary objections challenging the

enforceability of the agreement. *Id.* at 677. This Court concluded that the

appellant had averred a binding settlement agreement:

> [The a]ppellant offered to settle the dispute in consideration for three terms. [Former employer] accepted two of these terms during the mediation, and the mediator's February 3, 2020[,] email constituted [former employer's] acceptance of the third term. Thus, the averments of the complaint support that the parties reached a meeting of the minds on all essential terms. The two additional terms in the email that [the a]ppellant would not work [for a competitor] and [the modification of a] letter of reference for [the a]ppellant, were immaterial, since the email characterized them as mere "tweaks." Therefore, those terms did not constitute a counteroffer that nullified [the a]ppellant's offer….

*Id.* at 684.

Instantly, the trial court properly relied upon *Field* and *Toppy* in concluding that the Term Sheet is an enforceable agreement. *See* Trial Court Opinion, 1/27/25, at 8. Although the Term Sheet allowed for the final settlement agreement to include additional terms,[3] the Term Sheet identified an offer, *i.e.*, "the price to be paid" to the Yaffes and the Glasses for their ownership interests in Boyds as well as "how and when payments are to be made[,]" and the Yaffes' and the Glasses' agreement to those terms. *Id.*; *see also Step Plan Servs.*, 12 A.3d at 409. Thus, the trial court did not err in concluding that "[t]he Term Sheet, as instructed by *Field* and *Toppy*, is an enforceable contract." *Id.* at 13.

_____

[3] The Term Sheet contemplates a determination of the most tax-advantageous payment of the agreed-upon buyout, as well as a family settlement agreement regarding the orphans' court's proceedings. These additional terms are not essential, but also not insignificant. The Term Sheet provides the mediator with the authority to resolve drafting disputes.

In reaching this conclusion, we do not consider evidence of the parties' subsequent actions or court filings following the execution of the Term Sheet. At the enforcement motion hearing, the Glasses' counsel informed the trial court that "[w]e don't believe an evidentiary hearing is necessary in this matter because the [Term Sheet] on its face is unambiguous, and [the trial court] can interpret it as a matter of law." N.T., 9/7/24, at 5. When the trial court asked Appellants' counsel, Andrew DeFalco, Esquire (Attorney DeFalco), whether an evidentiary hearing should be conducted, Attorney DeFalco stated the following:

> [Attorney DeFalco:] **An evidentiary hearing is absolutely not necessary**, Your Honor. **In fact, I don't think under the law the [c]ourt can consider extrinsic evidence when ruling on the content of an indisputable clear document**.
>
> … [T]he only evidence that could be in[tro]duced is the parties testifying as to what they think the contract means[,] which is only a question for the court.
>
> THE COURT: Well, what about the issue of whether they intended to be bound by the writing?
>
> [Attorney DeFalco:] The intent is to be reflected only by the document itself. When the terms of the contract are unambiguous, they are deemed to reflect the intent of the parties….
>
> ….
>
> [Attorney DeFalco:] We think that it's clear **nobody is disputing that whatever document the … Term Sheet is, there is no ambiguity in it**. So I think hearing evidence as to what everybody thinks happened is not going to be helpful and I think [the court] is precluded from considering it….

*Id.* at 9-11 (emphasis added).

Thus, Appellants were afforded the opportunity to present evidence regarding any purported ambiguities in, or material terms missing from, the Term Sheet, including subsequent filings or evidence of conduct by the parties. They declined to do so, conceding the Term Sheet is unambiguous. Under these circumstances, Appellants cannot rely on extrinsic evidence, presented for the first time on appeal, as establishing ambiguities in, or essential terms missing from, the Term Sheet. *See Lesko*, 15 A.3d at 342 ("[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone"); Pa.R.A.P. 302(a) (stating a claim cannot be raised for the first time on appeal).

Finally, we observe that in its December 11, 2024, order, in granting the enforcement motion, the trial court ordered that the parties' outstanding litigation be marked settled, discontinued, and ended. *Yaffe v. Boyd General Partner, Inc., et al.*, Case No. 1712, *Yaffe v. Gushner, et al.*, Case No. 1808, *Glass, et al. v. Gushner, et al.*, Case No. 1809, 12/11/24, Order. However, as expressly stated in the Term Sheet's introductory paragraph, the parties agreed to settle, discontinue and end all pending litigation "**upon signing a Final Settlement Agreement**[.]" Term Sheet, Introductory Paragraph (emphasis added). Because no final settlement agreement has been executed, we conclude the trial court erred by ordering that *Yaffe v. Boyd General Partner, Inc., et al.*, Case No. 1712, *Yaffe v.*

*Gushner, et al.*, Case No. 1808, and *Glass, et al. v. Gushner, et al.*, Case No. 1809, be marked as settled, discontinued, and ended. Accordingly, we vacate aforementioned portion of the trial court's order, and remand to the trial court to order the drafting of the parties' final settlement agreement in accordance with the Term Sheet.

In summary, we agree with the trial court that the Term Sheet included the required offer, acceptance, and consideration as to render it an enforceable agreement. *See* Trial Court Opinion, 3/3/25, at 9. However, we vacate the trial court's directive that the parties' pending litigation (*Yaffe v. Boyd General Partner, Inc., et al.*, Case No. 1712, *Yaffe v. Gushner, et al.*, Case No. 1808, and *Glass, et al. v. Gushner, et al.*, Case No. 1809) be marked as settled, discontinued, and ended. We remand for the trial court to order the drafting of the final settlement agreement in accordance with the Term Sheet.

Orders affirmed in part, vacated in part, and remanded for further proceedings in accordance with this memorandum. Superior Court jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/20/2026

- 24 -