J-A06031-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NATALIYA TIMITSKAYA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES PETRAGLIA | : | No. 614 WDA 2025 |

Appeal from the Order Entered April 22, 2025
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  AR-23-006682

BEFORE:  OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: April 24, 2026**

Nataliya Timitskaya ("Timitskaya") appeals pro se from the order entered by the Allegheny County Court of Common Pleas ("trial court") denying her motion to modify an executed settlement agreement.  After a careful review, we affirm.

This case involves dental care provided to Timitskaya by James Petraglia ("Petraglia") on October 13, 2021.  Timitskaya claimed damages and injuries for Petraglia's alleged improper dental technique, and her alleged lack of consent for the extraction of tooth #9.

Timitskaya filed a complaint against Petraglia in the magisterial district court for the extraction of tooth #9, but failed to file a certificate of merit with the complaint.  The magisterial district judge held a hearing on November 29, 2023, and entered judgment in favor of Petraglia.

On December 28, 2023, Timitskaya filed a notice of appeal to the trial court. Also on December 28, 2023, Timitskaya filed a complaint in the trial court.

Since Timitskaya's complaint did not contain the requisite certificate of merit pursuant to Pa.R.Civ.P. 1042.3, on February 2, 2024 Petraglia filed a notice of intention to enter judgment of non pros on the professional liability claims raised. In response, Timitskaya filed a certificate of merit. On June 7, 2024, Petraglia filed an answer and new matter to Timitskaya's complaint.

On June 12, 2024, Timitskaya filed a praecipe to schedule an arbitration hearing. On August 30, 2024, the trial court scheduled the arbitration hearing for October 7, 2024. On that date, the board of arbitrators entered an award for Petraglia. On October 17, 2024, Timitskaya filed an appeal from the arbitration award and demanded a jury trial.

The trial court issued an order for the jury trial to be held before Judge Daniel D. Regan on March 24, 2025. On the date set for trial, the parties engaged in settlement discussions prior to jury selection and reached an agreement. The agreement was placed on the record:

> THE COURT: In order to receive full and final release and settlement of the claim that [] Timitskaya has against [Petraglia], [he] has agreed to pay [Timitskaya] $6,000.00. That will be made payable to [] Timitskaya. The parties will meet here in our courtroom tomorrow, which will be March 25, 2025, at 11:30 a.m. Defense Counsel will have with them a cashier's check made out to [] Timitskaya in the amount of $6,000.00. In return, [] Timitskaya has agreed to sign off on the full and final release, as well as the confidentiality and non-disparagement agreements.

- 2 -

And then the Court will order that the case be settled and discontinued and resolved as settled.

N.T., 3/24/2025, at 3-4.

After reading the terms of the settlement agreement into the record, Judge Regan then asked for confirmation that he had accurately summarized the terms. *Id.* at 4, 5. Timitskaya confirmed multiple times that she agreed to the terms of the settlement agreement. *Id.* at 5. Judge Regan asked several times if Timitskaya had any additions or corrections she wanted to make. *Id.* at 5, 6. Timitskaya responded each time that she did not want to add anything to the settlement agreement. *Id.* Thereafter, the following exchange occurred between Timitskaya and Judge Regan:

THE COURT: Okay. Okay. Anything else for the record from either party?

MS. TIMITSKAYA: So tomorrow will be last day when we have to make it possible to settle, and after that we don't have anything to do, yes?

THE COURT: After we meet here tomorrow and you sign the full and final release and confidentiality and non-disparagement paperwork, they will give you the check. That will be a full and final settlement of the case, and the case will be marked on the docket as resolved. And then nothing further will need to happen with the case, okay?

MS. TIMITSKAYA: Yes.

*Id.* at 7.

The parties reconvened on March 25, 2025. The terms of the settlement agreement were again read aloud in court and placed on the record. *See* N.T., 3/25/2025, at 9. Judge Regan stated that "Timitskaya has been given

a period of time this morning to review the full and final release." *Id.* at 10. The record reflects Timitskaya negotiated changes in language to the full and final release, some of which were accepted and incorporated into the agreement. *Id.* at 10, 11-12.

After discussing the negotiated changes, Judge Regan proceeded to ask if the partes were agreeable to the full and final release:

> THE COURT: Okay. So, therefore, [] Timitskaya, are you agreeable to the full and final release, and are you going to sign it?
>
> [] TIMITSKAYA: I sign it, and not any full -- yeah? It will be final signature, yes?
>
> THE COURT: It will be a full and final release, yes, and it will – the Court will do an order stating that the case has been settled, discontinued, and there's no further action at this docket number. All right. [] Timitskaya has signed the full and final release. [Petraglia's counsel] is signing the release.

*Id.* at 12-13.

Once both parties signed the agreement and the cashier's check was delivered to Timitskaya, Judge Regan stated that "the case has been settled and will be discontinued, and there will be no further action at this docket number." *Id.* at 15. The record reflects that on both days, Timitskaya had two language interpreters to assist her. *See* N.T., 3/24/2025, at 3; N.T., 3/25/2025, at 9.

On April 4, 2024, Timitskaya filed a motion to reopen the case. On April 16, 2024, Judge Regan heard argument on the motion.[1] Timitskaya first asked the trial court to accept new evidence of monetary damages. N.T., 4/16/2025, at 6, 7. Timitskaya explained the basis for her request before the trial court:

> So I -- Plaintiff make some changes in my motion, which I requested to add it to [Petraglia] full and final release and to change title. And all that paragraph what I want to edit, I – Plaintiff request then two party discharge each other. Both party ensure that no further obligation or liability can be pursued once agreement is executed. Plaintiff requested to revoke [Petraglia] full and final release and request that Court for compliance and to compel the [Petraglia] to correct the purported settlement.
>
> Plaintiff requested to protect the right of any party from unreasonable, unconvenience [sic], vexation, harassment, expense, prejudice by applying Rule 229. And final request is to request to revoke the full and final release and revoke damages, pain and suffering in the total amount $8,500.00 that includes 600 [sic] from previous settlement agreement for Plaintiff.
>
> All the Plaintiff request because it was not enough. I suppose, that a civil case and [Petraglia] involved in criminal charges too. If Plaintiff did not get enough compensation, Plaintiff request this Court to refer a civil case for a District Attorney for criminal charges for assault and find the damages to [Petraglia].
>
> Although Plaintiff want Court overturn of cancel previously decision judgment of order, Plaintiff request to -- the Court to appoint the Plaintiff attorney of counsel. And Plaintiff believe she qualify to get legal consultation. All the Plaintiff request Judge

---

[1] Although not fashioned as such, the trial court seemingly treated Timitskaya's motion to reopen as a petition to strike off the discontinuance and set aside the settlement agreement. Petraglia neither objected to the trial court's action below nor raised any argument about it in his brief before this Court.

- 5 -

appoint witness expert and dental expert to make Plaintiff interest of justice, require it in this Court.

My -- Plaintiff monetary damages. I have calculation, I -- Plaintiff requests -- in my motion, Plaintiff requested only 2500. Calculations show in total $6,524.94. Calculations show more than Plaintiff ask in motion. All -- the Plaintiff can prove all that what I have attached.

I cannot prove – I'm -- in my motion I put from 2021 when accident happened to present of the expenses. And Plaintiff cannot -- for 2021 when this accident happened and expenses and all that and also expenses and papers, not all of them. Plaintiff did not always ask for a receipt for copies. And public transportation, I attached something what I get from public authority.

But they cannot make that longer they -- from April 2022 and not more. So all that expenses I attached to the damages. You can review please and expenses for monetary damages more than Plaintiff ask in motion. If you have any questions, I can explain my calculation.

*Id.* at 9-12; *see also id.* at 15-24.[2]

In response, Petraglia's counsel objected to the additional monetary damages claimed because Timitskaya had almost two years to pursue her case and she knew of them at the time. *Id.* at 13. Counsel noted the terms of the settlement agreement and, in particular, that it was a full and final release. *Id.* at 13. Counsel rebutted Timitskaya's argument that she was pressured and did not fully understand the agreement by pointing out that Timitskaya reviewed the release with two interpreters, negotiated the terms of the

---

[2] A language interpreter was present to assist Timitskaya at the argument on her motion. N.T., 4/16/2025, at 2.

release, signed the release, and acknowledged that the case would be discontinued with prejudice after signing the release. *Id.*at 14-15. At the conclusion of the proceeding, Judge Regan said that he would take the motion under advisement. *Id.* at 20.

On April 22, 2024, the trial court denied Timitskaya's motion. Timitskaya filed this timely appeal.[3]

Timitskaya presents the following issues for our review:

1. Does there exist an error of law and error of fact in the case?

2. Does the full and final release meet the best interest of [Timitskaya]?

3. Was there new evidence available at the time of the original proceeding?

Timitskaya's Brief at v (suggested answers omitted).[4]

_____

[3] On May 28, 2025, the trial court issued an order denying Timitskaya's request for leave to file a motion for reconsideration.

[4] We note that the lack of formatting of Timitskaya's brief makes it difficult to review. Most significantly, Timitskaya restarts each section of her brief at page one. To avoid confusion, we renumber the brief starting at page one of the statement of the case in our citations thereto. Additionally, the argument portion of her brief includes numerous bald allegations seemingly untethered to any specific claim raised in violation of our Rules of Procedure. Although this Court will "liberally construe materials filed by a pro se litigant, [an] appellant it not entitled to any particular advantage because [he] lacks legal training." *Elliot-Greenleaf, P.C. v. Rothstein*, 255 A.3d 539, 542 (Pa. Super. 2021) (citation omitted). Timitskaya's "pro se status does not entitle a party to any particular advantage because of … her lack of legal training[, and] pro se litigants are bound by our procedural rules." *Deek Inv., L.P. v. Murray*, 157 A.3d 491, 494 (Pa. Super. 2017) (citations & quotation marks omitted). Nevertheless, we decline to deem her issues waived on this basis, and we will endeavor to address her arguments as best we can discern.

Timitskaya's claims are interrelated and we therefore address them together. She argues that the court should have reopened the record so she could introduce evidence that she was pressured to accept the settlement agreement, she did not understand the terms of the agreement, the amount of damages was calculated incorrectly, the court failed to modify or remove unconscionable terms in the settlement, and Petraglia's counsel fraudulently induced her to sign the agreement by changing the agreed upon terms of the settlement agreement. *Id.* at 23-40, 42, 43-44, 45, 48, 50-51. Additionally, Timitskaya contends there was a mutual mistake in the settlement terms, which renders the agreement invalid. *Id.* at 44, 53. She also argues that Judge Regan and Petraglia's counsel acted with "reckless disregard for the truth." *Id.* at 40; *see also id.* at 41, 42 (claiming that Judge Regan and Petraglia's counsel exercised deception, coercion, and threats to make her sign the agreement), 44 (asserting both the judge and Petraglia's counsel "created a hostile and abusive environment"), 49 (noting Petraglia's counsel created fake scenarios to force Timitskaya to agree to the settlement). She further notes that she did not have legal representation during the settlement negotiations, which she states resulted in an unjust settlement. *Id.* at 30-31, 37, 43, 48. Timitskaya claims that she sought additional protection from any action by Petraglia, but that was denied by Petraglia's counsel. *Id.* at 50.

She further argues that she had new evidence—additional monetary damages—that was not available at the time of the settlement negotiations.

*Id.* at 35, 37-38, 52, 53. Specifically, Timitskaya asserts that she is due additional expenses of $3,524.94 for rideshare and public transportation and other costs incurred between 2022 and 2025. *Id.* at 54. She also seeks punitive damages against Petraglia. *Id.* at 54-55. Ultimately, Timitskaya seeks to correct the damages amount and pursue additional recovery from Petraglia. *Id.* at 55.

"The authority to strike off a discontinuance is vested in the sound discretion of the trial court, and we will not reverse absent an abuse of that discretion." *Hopewell v. Hendrie*, 562 A.2d 899, 900 (Pa. Super. 1989) (citation omitted). The court is authorized strike off a discontinuance "to protect the rights of any party from unreasonable inconvenience, vexation, harassment, expense, or prejudice." Pa.R.Civ.P. 229(c). "Although this standard has most frequently been applied in cases where the plaintiff has actually intended to discontinue a lawsuit but the defendant objects, it equally will operate to protect a plaintiff who demonstrates a need for relief from a discontinuance it has obtained." *Hopewell*, 562 A.2d at 900 (citation omitted). In such circumstances, the plaintiff bears the burden of proof "by clear, precise and convincing evidence that she was induced into her settlement by fraud, mistake or imposition." *Murdoch v. Murdoch*, 210 A.2d 490, 491 (Pa. 1965) (per curiam).

"The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored." *Step Plan Servs., Inc. v.*

- 9 -

*Koresko*, 12 A.3d 401, 408 (Pa. Super. 2010) (citation omitted). "Settlement agreements are enforced according to principles of contract law, which require there to be an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his [or her] lawsuit, the defendant will pay the plaintiff the agreed upon sum)." *Liberty Prop. Ltd. P'ship*, 2026 WL 563873, at *3 (cleaned up). "Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement." *Koresko*, 12 A.3d at 409 (citation omitted).

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is de novo and to the extent necessary, the scope of our review is plenary as [this Court] may review the entire record in making its decision.

*Liberty Prop. Ltd. P'ship v. Kendall Heaton Assocs., Inc.*, ___ A.3d ___, 2026 WL 563873, at *3 (Pa. Super. 2026) (citation omitted).

A settlement will not be set aside except upon "a clear showing of fraud, duress, or mutual mistake." *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 947 (Pa. Super. 2004).

> Mutual mistake will afford a basis for reforming a contract. Mutual mistake exists, however, only where both parties to a contract [are] mistaken as to existing facts at the time of execution. Moreover, to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing.

*Zurich Am. Ins. Co. v. O'Hanlon*, 968 A.2d 765, 770 (Pa. Super. 2009) (citation omitted). "Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to

be not only the best, but the only, evidence of their agreement[.]" ***Koresko***, 12 A.3d at 409 (citation omitted).

The trial court found that the parties reached a valid settlement agreement. Trial Court Opinion, 7/30/2025, at 5. The trial court observed that Timitskaya, with the assistance of interpreters, understood the terms and agreed to resolve all the claims against Petraglia in exchange for $6,000.00. ***Id.*** at 5-8. It rejected Timitskaya's allegation of mutual mistake, finding she offered "no evidence that both parties were mistaken as to any existing facts at the time the settlement agreement was signed." ***Id.*** at 7. The trial court noted that Timitskaya sought additional damages after the execution of the settlement agreement, but that such a request is "not grounds for modification of an agreement." ***Id.*** at 8. The court thus concluded that the settlement agreement must be enforced because Timitskaya "acknowledged the terms and acceptance of said terms to the trial court on multiple occasions on the record and accepted a check in the amount of $6,000.00." ***Id.*** at 9.

The record supports the trial court's conclusion. As stated above, the record shows that with the aid of court-appointed interpreters, Timitskaya read, understood, and agreed to the terms of the settlement agreement, including a full release against Petraglia and the resolution of the case, in exchange for a check for $6,000. ***See Mastroni-Mucker v. Allstate Ins. Co.***, 976 A.2d 510, 518 (Pa. Super. 2009) (for a valid settlement agreement, "[t]here is an offer (the settlement figure), acceptance, and consideration (in

exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)") (citation omitted). Timitskaya's attempt to raise a mutual mistake as to the terms of the agreement is unavailing. Merely alleging a mutual mistake does not establish a mutual mistake existed at the time of the entry of the settlement agreement. Pointedly, Timitskaya offers no argument or evidence that both parties were mistaken as to any existing facts at the time the settlement agreement was signed, and Petraglia asserts that the record does not reflect that any such mistake occurred. *See* Petraglia's Brief at 16, 18, 19; *Koresko*, 12 A.3d at 409.

To the extent she claims there was a mutual mistake as to the settlement amount, she again fails to provide any support for the proposition that the parties were unaware of additional damages or failed to consider them. The majority of the additional damages she now claims accrued long before the settlement agreement was reached, and she advances no explanation as to why she did not seek these amounts when negotiating the agreement. Notably, Judge Regan asked Timitskaya multiple times whether she wanted to make additions or corrections to the settlement, and she declined. *See* N.T., 3/24/2025, at 5, 6.

Nor is there anything in the record to support her contention that she was somehow fraudulently induced into signing the agreement or that her assent was the product of duress. To the contrary, Timitskaya's claim that Judge Regan threatened, deceived, or coerced her into signing the release is

- 12 -

completely belied by the record. Instead, the record shows Judge Regan took great care to confirm she understood what she was signing and gave her time to ensure that she agreed to the terms of the settlement. Timitskaya did, in fact, agree to the terms of the settlement and release, including the settlement amount; her subsequent dissatisfaction with the amount she received or the terms to which she agreed is not a basis to strike the agreement. *See Emery v. Mackiewicz*, 240 A.2d 68, 69-70 (Pa. 1968) (upholding a settlement agreement when it found the full and final release to be clear, specific, all inclusive, and not obtained through fraud, duress or deception by defendants, and finding the plaintiff was unable to recover damages for alleged further injuries pertaining to the initial accident over a year after signing the release).

Timitskaya failed to satisfy her burden of proving that the settlement agreement was the product of fraud, mistake, or duress. *See Murdoch*, 210 A.2d at 491; *Hopewell*, 562 A.2d at 900; *Felix*, 848 A.2d at 947. We thus find no error or abuse of discretion in Judge Regan's refusal to strike off the discontinuance or set aside the settlement agreement.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>4/24/2026</u>